Per Curiam.

Bach of the defendants is charged with unlawful assembly (Penal Law, § 2092) and unlawful intrusion upon real property (Penal Law, § 2036). The defendants Baphael Martinez and Jose Sanchez are also charged, additionally with resisting a public officer in the discharge of his duty (Penal Law, § 1851).
The testimony disclosed that these four defendants together with three others (who failed to appear and whose bonds were ordered forfeited) entered Police Headquarters located in this county, for the purpose of seeing the Police Commissioner in order to discuss with him charges of alleged police brutality. They had no previous appointment with the Commissioner. However, they did confer with Police Inspector Savitt, who advised them that the Police Commissioner could not or would not see them. The group thereupon left the inspector’s office and proceeded to the second floor of Police Headquarters, where *96 they all -seated themselves on the floor of the public corridor, about 100 feet from the Police Commissioner’s office. Each of them was ordered to leave by Police Lieutenant Jones, who was in charge of the headquarters building. They were further advised by him that failure to comply would result in their arrest. Upon their continued refusal to leave, they were arrested and charged with unlawful intrusion. As they remained seated on the floor, they were further told that if they did not arise and move voluntarily, they would be charged additionally with obstructing and resisting a public officer in the discharge of his duty. The defendants Santiago and Walker arose, but the defendants Martinez and Sanchez refused to do so, and had to be carried out bodily to the public elevator.
The facts herein do not prove the guilt of any of the defendants beyond a reasonable doubt of the charge of unlawful assembly, contained in count 1 of the information, and each of the defendants is accordingly acquitted of that charge.
This leaves the charges of unlawful intrusion on real property and resisting and obstructing a public officer in the discharge of his duty. If no violation of unlawful intrusion has been established, then the charge of resisting and obstructing must likewise fall.
The principal question to be determined, therefore, is whether one can be guilty of unlawful intrusion upon a public building, in this case, Police Headquarters of the City of New York.
According to the public records in the office of the Register of the City of New York, County of New York, title to the building housing Police Headquarters (of which we can and do take judicial notice) is in the City of New York, by deed dated the 26th day of September, 1817, and recorded in Conveyance Liber 123, page 126. The City of New York is a municipal corporation (General Municipal Law, § 2). The City of New York is a body politic and corporate in fact and in law, with power to be contracted with and to have perpetual succession (Administrative Code of City of New York, § 1-2.0). It is authorized to acquire real property (New York City Charter, ch. 15, § 381), and it may also dispose of such property {Ibid., § 384), but only upon approval of the Board of Estimate. (Administrative Code, § 384.)
The Police Commissioner has control of the government and administration of the Police Department (New York City Charter, § 434). This power and responsibility must, perforce, include the maintenance and operation of the physical plants that house the Police Department. The immediate responsibility for plant maintenance is given to the Police Department’s Build *97 ing Superintendent (Administrative Code, § 434a-6.0, subd. b). The testimony disclosed that Lieutenant Jones was the duly authorized commanding officer in charge of the Police Headquarters building on the date in question. His instructions to the defendants to clear the corridor were ignored by the defendants, resulting in the case before us.
The Police Headquarters building was thus property owned by the City of New York. “ Property is ownership; the unrestricted and exclusive right to a thing; the right to dispose of a thing in every legal way, to possess it, to use it, and to exclude every one else from interfering with it ” (Black’s Law Dictionary, [3d ed.], p. 1447). A public building is one “ belonging to or used by the public for the transaction of public or quasi public business ” (Black’s Law Dictionary, ibicl., p. 1460).
The words ‘1 public property ’ ’ and ‘ ‘ public building ’ ’, as interpreted by the defendants in their brief are ill-defined. Their meanings may not be distorted into an exercise in semantics. The public owns such property only in a very broad and general sense. The deed to such property is not in the name of each individual citizen in this city, either as joint tenants or tenants in common. The title to Police Headquarters is in a municipal corporation known as the City of New York. Such so-called public building, especially one which houses so vital a functioning department as the Police Department, may not be used in a manner which suits the whim or caprice of every citizen, without reducing our government to chaos (Bi-Metallic Co. v. Colorado, 239 U. S. 441). There is no blanket right to every citizen in his use of this type of property. The rights of others must always be considered (Johnson v. May, 189 App. Div. 196, 204).
In a comparable situation, the Appellate Division, Third Department, said: “ School buildings are not public places in the sense that the use thereof may be demanded as a matter of right by any individual or organization as a forum for public or private discussions ” (Matter of Ellis v. Allen, 4 A D 2d 343, 344).
Section 2036 of the Penal Law does not define the words “ lot or piece of land ”. It makes no distinction between a criminal trespass on private lands or on public lands. Those words in the statute have been construed as applying to improved as well as unimproved land (People v. Leiby, 184 Misc. 21). The section merely interdicts trespass of a criminal nature. Statutes must be interpreted according to their precise and plain language (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 94, 232; People v. Hoyt, 166 N. Y. S. 953, 956; Matter of Young v. Gerosa, 11 A D 2d 67, 74). The evil which the statute aims at is the *98 wrongful intrusion, i.e., a trespass committed unlawfully and with criminal intent (People v. Stevens, 109 N. Y. 159).
The fact that the defendants, by their actions, may have also been guilty of a breach of the peace, is immaterial. They may be prosecuted, under a proper state of facts, for either or both of the alleged offenses (People v. De Stefanis, 34 N. Y. S. 2d 52; People v. Gootzeit, 302 N. Y. 888).
We find, as a fact, that the four defendants before us, by their actions, unlawfully intruded upon the building in question. If any doubt exists as to whether an intrusion may be had upon a public building, that is a question of law and any doubt on the law must be resolved in favor of the People (People v. Richter, 182 Misc. 96; People v. Busco, 46 N. Y. S. 2d 859). We are guided, in this connection, by the admonition contained in People v. Reed (276 N. Y. 5, 9) wherein the Court of Appeals said: ‘ ‘ While the defendant under our criminal procedure is entitled to the benefit of every reasonable doubt on the facts, the People should be entitled to every reasonable doubt a trial judge may have upon the law for, if he makes a mistake on the law, the People have no opportunity or method of reviewing his ruling, as strange as it may seem to us in this enlightened day ”.
Accordingly, each of the defendants is found guilty of unlawful intrusion on real property, as charged in count 2 of the information. The defendants Raphael Martinez and Jose Sanchez are also found guilty of resisting a public officer in the discharge of his duty, as charged in count 3 of the information.
Concur — Rihgel, P. J. Gassman and O’Coiwell, JJ.