(573 P.2d 1124)

No. 49,021

STATE OF KANSAS, *Appellee,* v. WALTER DAVIS, *Appellant.*

Opinion filed January 6, 1978.

*Rex Lawhorn,* of Parsons, for the appellant.

*William J. Daley,* county attorney, and *Curt T. Schneider,* attorney general, for the appellee.

Before HARMAN, C.J.*, FOTH and SPENCER, JJ.

FOTH, J.: The defendant, Walter Davis, was convicted of the theft by deception of $300 belonging to the Brown Chapel, AME Church, of Parsons. Two of his arguments on appeal have merit, including one which requires reversal.

---

* This opinion was approved by Harman, C.J., prior to his retirement.

His first argument is that the evidence did not support the verdict. In fact, there was a substantial variance between the proof and the charge. Taken in the light most favorable to the state, the evidence showed that the defendant sold the church's mimeograph machine without authority. He thus exercised unauthorized control over the machine in violation of K.S.A. 21-3701(*a*). The charge, however, was obtaining $300 of the church's money by deception, in violation of K.S.A. 21-3701(*b*). The state's evidence also tended to show that defendant falsely represented to the purchaser that he was authorized to sell the machine, thus acquiring control over $300. Whose $300 it was is yet another question—only by recognizing defendant's apparent authority to sell could it be said that the purchaser acquired title to the machine and the church title to the $300. While there was evidence on this issue there was no argument and no instruction.

We need not determine, however, whether this variance was fatal because we think a second issue requires a new trial. The testimony of the Reverend John A. Trigg, one of the key witnesses against the defendant, was admitted by way of a transcript of his testimony at defendant's preliminary hearing. Defendant repeatedly objected to the use of the transcript, asserting his right to confront the witness and cross-examine him in front of the jury. He thus asserted a constitutional claim evoking well-established rules for its determination.

Federal and state constitutional standards normally require the state to produce a witness at the trial. *Motes v. United States,* 178 U.S. 458, 44 L.Ed. 1150, 20 S.Ct. 993 (1900); *Barber v. Page,* 390 U.S. 719, 20 L.Ed.2d 255, 88 S.Ct. 1318 (1968); *State v. Terry,* 202 Kan. 599, 451 P.2d 211. Only (1) when the witness has testified at a previous judicial proceeding against the defendant in which the defendant had an opportunity to cross-examine, and (2) the witness is unavailable, is it acceptable to read the testimony from the previous hearing. *Barber v. Page,* supra; *State v. Lesco,* 194 Kan. 555, 400 P.2d 695; *State v. Guthrie,* 192 Kan. 659, 391 P.2d 95; *State v. Brown,* 181 Kan. 375, 312 P.2d 832; *State v. Bonskowski,* 180 Kan. 726, 308 P.2d 168; *State v. Streeter,* 173 Kan. 240, 245 P.2d 1177. Also, see K.S.A. 60-460(*c*)(2) and 60-459(*g*). Since it is clear that testimony of a witness at the preliminary hearing satisfies the first prong of the test (*Barber v. Page,* supra; *State v. Bey,* 217 Kan. 251, 535 P.2d 881; *State v. Washington,* 206 Kan.

336, 479 P.2d 833; *State v. Brown,* 181 Kan. 375, 312 P.2d 832; *State v. Terry,* 202 Kan. 599, 451 P.2d 211), the inquiry in this case focuses on whether the witness was unavailable.

The controlling test in Kansas for unavailability is the so-called "reasonable diligence" rule. That rule was expressed in *State v. Washington,* 206 Kan. 336, 479 P.2d 833, as follows:

"Under the federal constitutional standard as applied to the states, the test of unavailability, for the purposes of the exception to the confrontation requirement, is whether the prosecutorial authorities have made a 'good faith effort' to obtain the witness's presence at trial (*Barber v. Page,* 390 U.S. 719, 20 L.Ed.2d 255, 88 S.Ct. 1318). Consistent with the federal mandate is our long-standing rule that before the state may use the testimony of an absent witness given at a former trial or preliminary hearing, it must be made to appear the witness cannot, by the exercise of reasonable diligence, be produced at trial (*State v. Lesco,* 194 Kan. 555, 400 P.2d 695; *State v. Guthrie,* 192 Kan. 659, 391 P.2d 95; *State v. Brown,* 181 Kan. 375, 312 P.2d 832; *State v. Bonskowski,* 180 Kan. 726, 308 P.2d 168; *State v. Streeter,* 173 Kan. 240, 245 P.2d 1177. Also, see K.S.A. 60-459[g])." (p. 338.)

To establish "reasonable diligence" the state must present evidence of the effort made to secure the attendance of the witness. C.J.S. states the general rule that "[t]he preliminary proof should be full and convincing." 31A C.J.S., *Evidence,* § 391, p. 963. In *State v. Brown,* 181 Kan. 375, 312 P.2d 832, the court made it clear that *evidence* of the state's diligence must be produced. In *Brown* the court stated:

"Statements of counsel, however, are not evidence any more than are the opening statements of counsel in the presentation of a case before a jury or to the court. The foundation, which the law contemplates, is a *foundation in evidence. It is proof that is required.* Proof that due diligence has been exercised and that the testimony of the witness is not available. A proper foundation for the introduction of testimony of the character now under consideration required that the assistant county attorney and the deputy sheriff, as well as the other necessary witnesses, testify under oath with respect to the facts relied upon as the foundation, giving the defendant full opportunity to cross-examine. In addition, documentary evidence relied upon for the foundation should be properly introduced in evidence." (pp. 394-5.)

In this case the only evidence of Rev. Trigg's unavailability was the assertion of the prosecutor that the witness lived in Springfield, Missouri, and that he had been served there with a Kansas subpoena but was not present. Even assuming the prosecutor's statements in open court had the effect of sworn testimony, they fall far short of showing "reasonable diligence" in securing the witness's personal attendance at the trial. There was

no showing of any effort to secure voluntary attendance through personal contact or persuasion, much less any resort to the uniform act to secure the attendance of witnesses from without the state. The service of the Kansas subpoena in Missouri proved only that the witness was there at the time it was served—we are left to speculate as to what the witness was told or understood about his duty to appear in response to the subpoena. If he inquired, we would assume he was told he need not attend.

In *State v. Tyler,* 187 Kan. 58, 353 P.2d 801, the court took judicial notice that an out-of-state witness's location in Miami, Oklahoma, was but a three-hour automobile ride from Olathe, the place of trial, over excellent roads. In ordering a new trial it held: "In a criminal case, the state did not sufficiently lay a basis for the introduction of a transcript of the former testimony of an absent witness by merely offering testimony of a deputy sheriff that he attempted to serve a subpoena upon the witness and found that witness had moved to Oklahoma. It was further agreed that *the state had made no effort to secure the voluntary appearance of the witness or to employ the uniform act to secure the attendance of witnesses from without the state."* (Syl. Emphasis added.)

We note that Springfield, Missouri, is no further from Parsons, the place of trial here.

"The absence of a witness from the jurisdiction does not provide a sufficient ground for suspension of the confrontation requirements of the Sixth Amendment to the United States Constitution and Section 10 of the Bill of Rights of the Kansas Constitution, particularly in view of the procedural tools now available to the prosecution to insure attendance of material witnesses and the increased cooperation between states and the federal government with respect to securing the attendance of witnesses from without this state." *(State v. Kirk,* 211 Kan. 165, 170-71, 505 P.2d 619.)

As the court noted in *Kirk,* it is not always necessary to utilize the uniform act, but it is necessary to demonstrate a good faith effort. Here, so far as the record shows, the state's effort was at best perfunctory. We therefore hold that it was error to admit the transcript on the strength of the meager showing made.

Because the error infringed the appellant's constitutional right to confront the witnesses against him, to find it harmless this court would have to conclude beyond a reasonable doubt that "the error had little, if any, likelihood of having changed the result of the trial." *(State v. Hamilton,* 222 Kan. 341, 345, 564 P.2d 536.)

The challenged testimony contradicted most of the key points in defendant's version of the events. In contrast to defendant's testimony, the witness testified that neither he nor the board of trustees authorized the sale of the machine, that the sale of church property had to be approved by both himself as the minister and the quarterly conference of the church, and that no money could be disbursed without his approval. He also denied receiving any money or groceries from the defendant, and denied knowledge of the sale, while defendant's story had the minister accompanying him when he cashed the check, receiving groceries and later cash from the proceeds, and reading defendant's report of the sale. We cannot conclude beyond a reasonable doubt that the challenged evidence had no substantial impact on the jury.

In view of our conclusion on this issue we need not reach the other questions raised. The conviction is reversed and the case is remanded for a new trial.