(721 P.2d 284)

No. 58,187

STATE OF KANSAS, *Appellee*, v. LARRY JOE FONDREN, *Appellant*.

Petition for review denied November 13, 1986.

Opinion filed June 19, 1986.

*Bob Forer*, public defender, of Junction City, and *Charles R. Clack*, of Junction City, for the appellant.

*Lloyd R. Graham*, assistant county attorney, and *Robert T. Stephan*, attorney general, for the appellee.

Before ABBOTT, C.J., BRISCOE and DAVIS, JJ.

ABBOTT, C.J.: This is a direct appeal by the defendant, Larry Joe Fondren, from a felony conviction of aggravated burglary (K.S.A. 21-3716) and a misdemeanor conviction of theft (K.S.A. 1985 Supp. 21-3701[a]).

The charges against this 20-year-old defendant stem from a purse-snatching incident at the Washington Elementary School in Junction City on September 13, 1984, while school was in session.

The alleged theft occurred in an annex building of the school. The annex consists solely of classrooms and was occupied by approximately sixty students. The purse stolen was taken from the closet of a classroom in the annex building.

The defendant fled with the purse when he was confronted in the classroom by a teacher at the school. Several witnesses identified the defendant as the individual who ran from the school grounds. The purse and its contents were retrieved from an alley in the vicinity of the school where defendant had fled. The defendant was apprehended at a nearby residence and his clothing matched the description given by several witnesses. Defendant was positively identified at the scene by school personnel who had pursued him.

Defense counsel requested an instruction on simple burglary as a lesser included offense of aggravated burglary, the crime charged. The trial court refused the requested instruction.

After deliberating about 20 minutes, the jury returned guilty verdicts for misdemeanor theft and aggravated burglary.

The defendant's first point on appeal is that the court erred in not instructing the jury on burglary. The defendant's sole argument for an instruction on simple burglary is that the only unauthorized entry was of the classroom itself, and that room was not occupied by a human being. This evidence, defendant contends, entitles him to an instruction on simple burglary.

The trial court's duty to instruct on lesser crimes was recently recited in *State v. Galloway*, 238 Kan. 415, Syl. ¶ 1, 710 P. 2d 1320 (1985): "The duty of the trial court to instruct the jury on lesser crimes arises only when there is evidence upon which a defendant might reasonably be convicted of the lesser charge. Following *State v. Royal*, 234 Kan. 218, Syl. ¶ 4, 670 P.2d 1337 (1983)."

The only distinction between the crime of burglary and the crime of aggravated burglary is the presence of a human being in the structure. Aggravated burglary contains the requirement that the place of the burglary be occupied by a human being at some point during the course of the burglary. See K.S.A. 21-3716 and

K.S.A. 21-3715; *State v. Reed,* 8 Kan. App. 2d 615, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983).

The occupancy requirement of aggravated burglary has been considered in previous decisions of the Kansas courts. In *State v. Lora,* 213 Kan. 184, 195, 515 P.2d 1086 (1973), an aggravated burglary conviction was upheld despite the fact that the house was unoccupied when the defendant entered. The owners of the house returned while defendant was in the residence. The occupancy requirement is satisfied so long as there are human beings present when the ulterior felony or theft is committed. See also *State v. Reed,* 8 Kan. App. 2d 615, which held that the crime of aggravated burglary occurs whenever a human being is present in the building during the course of the burglary. It is irrelevant at what point in time the human being is present so long as the presence is sometime during the course of the burglary. And as observed in the notes to PIK Crim 2d 59.18: "When a person enters the premises after the burglary has commenced but before the defendant has left the premises, the offense constitutes aggravated burglary."

Moreover, it has been held that the burglar need not know that someone else is present in the structure entered, nor must he intend to enter an occupied structure to be guilty of aggravated burglary. Knowledge by the accused of the presence of a human being is not required in order to be guilty of the crime of aggravated burglary. *State v. Price,* 215 Kan. 718, 721, 529 P.2d 85 (1974). In fact, a burglar may enter and leave the structure without ever realizing human beings were present. See *State v. Nesmith,* 220 Kan. 146, 551 P.2d 896 (1976) (owners of burglarized house were asleep upstairs when defendant burglarized the house).

None of the foregoing authorities suggest that the presence of the human being must be confined to that area of the structure where the burglar is committing the theft.

In addition, the evidence is undisputed that a teacher at the school interrupted and confronted defendant during the crime. The teacher's subsequent presence in the classroom, which was previously unoccupied, standing alone, established the presence of a human being and elevated the offense to aggravated burglary.

The unexpected confrontational situation between the de-

fendant and the teacher is precisely what the more serious offense of aggravated burglary is designed to protect against. This court noted in *State v. Reed*, 8 Kan. App. 2d at 616-17:

"The purpose behind the aggravated burglary statute is to describe a more serious offense than simple burglary where there is the possibility of contact between the victim and the burglar and the accompanying potential for a crime against the person to occur. This danger is just as great regardless of when during the burglary the victim comes to be in the building. . . . Thus, neither the knowledge nor the conduct of the burglar elevates his offense to aggravated burglary; rather, the severity of the crime depends upon the mere presence or absence of any human being in the same structure."

In sum, the evidence is undisputed that a human being was present in the building. Hence, the evidence would only indicate the offense of aggravated burglary. There being no evidence upon which defendant could reasonably be convicted of simple burglary, he was not entitled to the requested instruction. The trial court did not err in refusing defendant's request.

The defendant next challenges the use of the preliminary hearing transcript of the testimony of Alvin Ferguson, the school principal and a prosecution witness. He contends use of the absent witness's prior testimony violates his right of confrontation under the Sixth Amendment.

The State moved to use the preliminary hearing transcript of Ferguson's testimony on the day of trial due to Ferguson's illness. Ferguson, who had been subpoenaed, suffered a heart attack the week before trial. Defense counsel does not contend otherwise. The trial court admitted the prior testimony of Ferguson over defendant's objection. The defendant was present at the preliminary hearing on October 5, 1984, and his counsel cross-examined Ferguson. Kansas appellate courts have permitted the use of an absent witness's prior testimony from a preliminary hearing wherein the defendant was afforded the opportunity to cross-examine the witness in the prior proceeding. See, e.g., *State v. Henderson*, 226 Kan. 726, 603 P.2d 613 (1979); *State v. Watie, Heard and Heard*, 223 Kan. 337, 574 P.2d 1368 (1978); *State v. Alderdice*, 221 Kan. 684, 561 P.2d 845 (1977).

For purposes of the Sixth Amendment's Confrontation Clause the test for "unavailability" is the "reasonable diligence" rule. The rule was stated in *State v. Davis*, 2 Kan. App. 2d 10, 12, 573 P.2d 1124 (1978):

" 'Under the federal constitutional standard as applied to the states, the test of

unavailability, for the purposes of the exception to the confrontation requirement, is whether the prosecutorial authorities have made a "good faith effort" to obtain the witness's presence at trial (*Barber v. Page*, 390 U.S. 719, 20 L. Ed. 2d 255, 88 S. Ct. 1318). Consistent with the federal mandate is our long-standing rule that before the state may use the testimony of an absent witness given at a former trial or preliminary hearing, it must be made to appear the witness cannot, by the exercise of reasonable diligence, be produced at trial (*State v. Lesco*, 194 Kan. 555, 400 P.2d 695; *State v. Guthrie*, 192 Kan. 659, 391 P.2d 95; *State v. Brown*, 181 Kan. 375, 312 P.2d 832; *State v. Bonskowski*, 180 Kan. 726, 308 P.2d 168; *State v. Streeter*, 173 Kan. 240, 245 P.2d 1177, Also, see K.S.A. 60-459[g]).' "

Finally, it should be noted that the finding of "unavailability" by the trial court is a discretionary determination. *State v. Watie, Heard and Heard*, 223 Kan. at 341; *State v. Steward*, 219 Kan. 256, 264, 547 P.2d 773 (1976).

In the instant case, the defendant's sole objection to admissibility of the preliminary hearing transcript is that it denied defendant's right to confront the witness, Ferguson, at trial. Defendant essentially asserts that the cross-examination afforded at the preliminary hearing was insufficient. According to defendant's view, the prosecution should have requested a continuance until the witness was available in lieu of using the transcript, and the failure to do so was not the exercise of "reasonable diligence" to procure Ferguson's attendance at trial.

The continuance argument is without merit. The State was not required to request a continuance. See *State v. Watie, Heard and Heard*, 223 Kan. at 341-42. Moreover, the granting of a continuance is a matter within the trial court's discretion. A pertinent consideration in granting a continuance is the materiality and importance of the probable testimony. In light of the numerous State witnesses who consistently described the defendant and identified him at the time of his apprehension, Ferguson's testimony is not that critical on a single point. Moreover, the defendant did not object in the trial court that the State had not satisfactorily established Ferguson's illness. By admitting the preliminary hearing testimony, the trial court found Ferguson to be an unavailable witness. See *State v. Staab*, 230 Kan. 329, 333-336, 635 P.2d 257 (1981).

Finally, the defendant maintains that the cross-examination of the absent witness afforded at preliminary hearing was insufficient to satisfy his right to confront witnesses because the incentive to cross-examine at preliminary hearing differs from that at trial. Defendant, however, was not significantly limited in any

way in the scope or nature of cross-examination. In *Ohio v. Roberts*, 448 U.S. 56, 66, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980), the United States Supreme Court recognized that in addition to unavailability of the witness, the hearsay offered (preliminary hearing testimony) must bear "indicia of reliability." The court indicated that "reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception." And, drawing from *California v. Green*, 399 U.S. 149, 26 L. Ed. 2d 489, 90 S. Ct. 1930 (1970), the court noted guarantees of trustworthiness exist in the accouterments of the preliminary hearing itself. *Ohio v. Roberts*, 448 U.S. at 73. The confrontation clause does not require an inquiry into the "effectiveness" of defense counsel's cross-examination of the witness at the preliminary hearing. *Ohio v Roberts*, 448 U.S. at 73 n.12.

It would have been preferable, and the trial court should have required that the State call the witness's physician to give sworn testimony of the witness's ability to participate in a trial. The record contains only the assertions of the prosecutor. However, defense counsel did not contest the witness's physical condition. For all practical purposes, the witness's illness and unavailability was conceded. Thus, the question of the witness's unavailability was waived for purposes of appeal. See *State v. Staab*, 230 Kan. at 336. Defendant's sole contention pertains to the State's failure to request a continuance until the witness was well enough to appear at trial. As discussed previously, there was no error in this regard. The preliminary hearing testimony of Ferguson, an unavailable witness, was properly admitted into evidence.

The defendant next argues the element of an "unauthorized entry" into the school building has not been established by the evidence. Defendant's argument that he did not lack authority to enter the school is premised on the public character of the building. In short, defendant contends that one cannot commit a burglary or aggravated burglary by entering a public building during its regular hours, because such an entry is not unauthorized. No authority is cited by defendant to support this position.

Kansas' burglary statutes make no distinction based on the character of the premises. *State v. Reed*, 8 Kan. App. 2d at 617. Both burglary and aggravated burglary may be committed in

"*any* building," provided the other elements of the crime are present. See K.S.A. 21-3715, K.S.A. 21-3716.

In the instant case, the State presented evidence in the form of the school principal's testimony, which was uncontradicted by the defendant, that the defendant had no authority or business in the school. Neither defendant nor any of his family members were currently enrollèd at the school. Moreover, the defendant, as a former student at the school, was aware of the policy of reporting to the office upon entering the building. In short, the State's witness directly testified that defendant did not have authority, express or implied, to enter the school.

The defendant's argument, distinguished upon the character of the building entered, compels the conclusion that *any entry* into a public building is lawful, regardless of the purpose for which an individual enters. This would particularly be the case where the entry occurs during normal business hours when the building, wholly or in part, is open to the public. This contention is premised upon the rationale that buildings open to the public impliedly authorize, invite or give consent to the public to enter.

The view taken in some jurisdictions links the authority to enter a public building with the purpose or business for which the public building is held open. That is, an entry is impliedly authorized only to the extent it is consistent with the purpose of or business transacted in the building. See, *e.g., People v. Bozeman*, 624 P.2d 916 (Colo. App. 1980); *State v. Adams*, 94 Nev. 503, 581 P.2d 868 (1978). Accord *People v. Deptula*, 58 Cal. 2d 225, 373 P.2d 430 (1962); *State v. Embree*, 130 Ariz. 64, 633 P.2d 1057 (Ariz. App. 1981). We believe this approach is more sound.

While the Kansas burglary statutes makè no distinction between private and public buildings, the defendant's public building argument must fail for other reasons. It is true that school buildings have been held to be public buildings. However, those interpretations have not arisen in the context of the applicability of a criminal statute. A New York decision is instructive. In *People v. Martinez*, 43 Misc. 2d 94, 250 N.Y.S.2d 28 (1964), four defendants were prosecuted for unlawful intrusion upon real property (criminal trespass). The defendants had entered the police headquarters building to see the commissioner regarding allegations of police brutality. They sat down on the floor of a public corridor and refused to leave after being ordered to do so. The four defended the criminal trespass charge by

contending that the police headquarters was a public building and therefore they could not commit an unlawful intrusion. The court first acknowledged that the penal statute made no distinction between private and public lands. In any event, the court stated that a "so-called public building . . . . may not be used in a manner which suits the whim or caprice of every citizen." 43 Misc. 2d at 97. There is no blanket right to every citizen in his use of this type of property. Thus, the defendants could be charged with criminal trespass.

Finally, the characteristics of a school building, if it is considered a public building, are clearly distinguishable from other public buildings, such as a department store, the capitol, or an airline terminal. The general public is not invited onto the school premises for nonspecific, unrelated-to-school purposes. The only persons with reason or authorization to enter the school are school district personnel, students, teachers, perhaps a student's family members, and others having implied or express authority to enter to carry out legitimate activities. There is no evidence in the record nor any contention by defendant that he was any of these individuals. See *People v. Bozeman*, 624 P.2d at 918-19. The school policy of obtaining permission to be on the school premises by reporting to the office upon entering a school is a common one, as testified to by the school principal.

In sum, there is ample evidence to establish the element of an entry without authority and support the aggravated burglary conviction. We would caution that the key to this case is the defendant's knowingly *entering* the school *without express or implied authority*, with intent to commit a theft.

Affirmed.