(186 P.3d 847)
No. 96,368

S<small>TATE OF</small> K<small>ANSAS</small>, *Appellee*, v. J<small>AMES</small> A. M<small>AY</small>, *Appellant*.

Opinion filed July 3, 2008.

*Christina Waugh*, of Kansas Appellate Defender Office, for appellant.

*Clay Britton*, legal intern, *Brenda J. Clary*, assistant district attorney, *Charles E. Branson*, district attorney, and *Paul J. Morrison*, attorney general, appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

MCANANY, J.: James A. May appeals his conviction for aggravated burglary, claiming the district court made several sentencing errors and improperly instructed the jury. He also claims there was insufficient evidence to support his conviction. Since we examine the evidence in the light most favoring the State in considering May's complaint about the sufficiency of the evidence, we will recount the evidence in that light.

Greg and Becky Orth and their two children moved into their newly constructed home in Lawrence in about December 2004. The house itself was completed, but no landscaping had been installed and the swimming pool in the backyard had not yet been completed. On February 15, 2005, Becky Orth left her home at 8:30 a.m. to take her son to school and then to go to the gym. No one remained at home, and no workmen were scheduled for that day. The home has an attached garage. Orth left the overhead garage door open about 2 feet to permit the family dog to enter the garage while she was gone. The door from the garage to the house was unlocked.

When Orth returned home at 12:30 p.m., she saw an aqua colored pickup truck with purple and pink stripes parked in front of the garage doors. As she entered the garage, she confronted a man later identified as May standing in the house at the door to the garage. Orth asked him who he was and what he was doing there. May made some reference to the pool and the grass, uttered some

profanities, and headed for the garage door. Orth looked into the kitchen, which is near the door to the garage, and saw a plastic tub filled with the family's electronics equipment. She also saw a big duffle bag and a pillow case. Both contained clothes and jewelry taken from various rooms in the house. She returned to the garage in time to see May run to his truck and speed off. Orth noted the license number of the truck and called the police.

May's colorful truck was located 2 days later. He was arrested and identified by Orth in a photo array. May was charged with aggravated burglary pursuant to K.S.A. 21-3716. At trial, the court denied May's request for a jury instruction on the lesser-included offense of simple burglary. The jury convicted May of aggravated burglary, and the court denied May's motion for a new trial.

### Sufficiency of the Evidence

May claims there was insufficient evidence to convict him of aggravated burglary because (1) there was no evidence that a human being was present in the home during the burglary and (2) there was no evidence that he entered the home with the intent to commit a theft.

As noted earlier, we examine the evidence in the light most favoring the State. Our task is to determine whether a rational factfinder, relying on this evidence, could have found May guilty beyond a reasonable doubt. In doing so, we do not reweigh the evidence, pass on the credibility of witnesses, or resolve conflicts in the evidence. See *State v. Hayden*, 281 Kan. 112, 132, 130 P.3d 24 (2006).

### — Occupied vs. Unoccupied

Here, aggravated burglary required proof that May knowingly entered into the Orths' home without authority and with the intent to commit a theft therein while the home was occupied by a human being. See K.S.A. 21-3716. May claims that Orth was not in the home during the burglary but only showed up afterwards. Thus, he argues, the crime could only be simple burglary, which does not require the house to be occupied at the time of the crime. This issue requires us to interpret K.S.A. 21-3716, an issue of law over

which we have unlimited review. *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

We have consistently held that the presence of a person in a structure at any time during a burglary constitutes aggravated burglary. See *State v. Romero*, 31 Kan. App. 2d 609, 610-12, 69 P.3d 205 (2003); *State v. Fondren*, 11 Kan. App. 2d 309, 310-12, 721 P.2d 284, *rev. denied* 240 Kan. 805 (1986); *State v. Reed*, 8 Kan. App. 2d 615, 616-19, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983). May, however, relies on *State v. Ervin*, 223 Kan. 201, 201-02, 573 P.3d 600 (1977), in which the defendant's act of putting his hand through the window of a vehicle qualified as entry and the crime of burglary was completed in that instant. Since burglary is completed at the moment of entry, May argues, Orth's later arrival on the scene does not transform simple burglary into aggravated burglary.

*Ervin* involved a charge of simple burglary, not aggravated burglary. May's construction would frustrate the purpose of the distinction between simple burglary and aggravated burglary, which is to recognize as a more serious crime those burglaries which can result in a dangerous and unexpected confrontation between the burglar and an occupant. See *Fondren*, 11 Kan. App. 2d at 310-12. In *Reed*, 8 Kan. App. 2d at 616-17, the court observed:

"The purpose behind the aggravated burglary statute is to describe a more serious offense than simple burglary where there is the possibility of contact between the victim and the burglar and the accompanying potential for a crime against the person to occur. This danger is just as great regardless of when during the burglary the victim comes to be in the building. . . . [T]he severity of the crime depends upon the mere presence or absence of any human being in the same structure."

To that end, aggravated burglary does not require proof that the defendant knew there was a person present in the building at the time it is burgled. The mere presence of a person during the crime is sufficient. See *State v. Watson*, 256 Kan. 396, 400-01, 885 P.2d 1226 (1994); *Fondren*, 11 Kan. App. 2d at 311.

May attempts to distinguish these cases from his based upon the holding in *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1973). Burglary, aggravated or otherwise, involves "knowingly and without authority entering into or remaining within" a building. See K.S.A.

21-3715 and K.S.A. 21-3716. In *Lora*, the defendant entered the victim's unoccupied home, waited for her, and then raped her when she returned. In upholding the aggravated burglary conviction, the *Lora* court appeared to rely on the phrase "remaining within" in the statute to conclude that aggravated burglary includes burglaries during which the victim is in the structure, regardless of the timing of the victim's arrival. 213 Kan. at 195. May points out that in his case, unlike in *Lora*, he was not charged with remaining within Orth's home. We fail to appreciate the compelling thrust of this argument. Neither did this court in *Reed*.

In *Reed*, the court noted that the remaining in provision in the statute deals with circumstances quite different from those in the "entering into" scenario. One may be guilty of burglary by entering into the premises without authorization. Even if one enters the premises with authorization, one may still be guilty of burglary by remaining within the premises when authority has been withdrawn. See *State v. Brown*, 6 Kan. App. 2d 556, Syl. ¶ 4, 630 P.2d 731 (1981). May did not overstay his welcome. His entry into the Orths' home was unauthorized and unlawful from the start.

Finally, May argues that since he had nothing in his hands when Orth confronted him, there was no evidence that he was in the process of committing a burglary during her presence. His theory seems to be that even if he entered the house with the intent to commit a theft, he abandoned the crime when he heard Orth open the garage door.

We reject this argument. Theft includes obtaining unauthorized control over property with the intent to permanently deprive the owner of it. See K.S.A. 21-3701. Viewed in the light most favoring the State, the jury could easily conclude that May had assembled in the kitchen the items being stolen and had opened the door from the house to the garage in order to transport them to his truck so he could carry them off and thereby permanently deprive the Orths of them. The jury could easily conclude that Orth arrived during the ongoing commission of the crime.

*— Intent to Commit a Theft*

May contends the State failed to prove that he entered the Orths' home with intent to commit a theft. This argument ignores the substantial circumstantial evidence to the contrary. May's intent can be inferred from the surrounding circumstances, including the time of day, the character of the building, his actions on entering the home, and his explanation when confronted. See *State v. Harper*, 235 Kan. 825, 828, 685 P.2d 850 (1984).

Becky Orth testified that from the street her newly constructed home appeared not yet to have been occupied as of that February morning. No one was home. There were no cars in the driveway. The front yard consisted of raw dirt. There was no landscaping. There were no drapes in the windows, just temporary shades. May had to crawl under the garage door to gain entry to the house. The items assembled in the kitchen were in containers so they could be transported from the house. They had been taken from various rooms in the house. May's nervous explanation about the pool and the yard when Orth confronted him made no sense. He had no tools with him or in his truck, and it was mid-February, a less than ideal time for landscaping work. May made his escape at the first opportunity.

There was ample evidence that May entered the Orths' home with the intent to steal their household goods.

*Jury Instruction — Lesser-Included Offense*

May contends the district court erred in failing to instruct the jury as to the lesser-included offense of simple burglary. May had the right to an instruction on simple burglary if the evidence, viewed in the light most favorable to his theory of the case, would justify a jury verdict based upon that theory and the evidence did not exclude a theory of guilt on the lesser offense. See K.S.A. 22-3414(3); *State v. Williams*, 268 Kan. 1, 15, 988 P.2d 722 (1999). To warrant an instruction on simple burglary, there had to be evidence that no one was in the home during the burglary. Considering our earlier discussion of the issue, there is no evidence that he was alone in the home throughout the crime so as to support a verdict of simple burglary. A similar argument was advanced and

rejected in *Jenkins v. State*, 32 Kan. App. 2d 702, 704-05, 87 P.3d 983, *rev. denied* 278 Kan. 845 (2004). We consider it and reject it here. The district did not err in refusing to instruct the jury on simple burglary as a lesser-included offense.

### May's Criminal History

May claims that the district court erred in classifying his two prior burglary convictions for the purpose of calculating his criminal history. May pled guilty to two burglaries in 1980, at a time when the statute did not differentiate between burglaries of dwellings and of other buildings. K.S.A. 21-3715 (Weeks). Pursuant to K.S.A. 21-4711(d)(1) if the prior burglary was of a dwelling, the conviction is classified as a person felony pursuant to K.S.A. 21-3715(a); otherwise, under K.S.A. 21-4711(d)(2) the burglary is considered a nonperson felony pursuant to K.S.A. 21-3715(b) and (c). The sentencing court determined that May's prior burglaries were of dwellings, thereby increasing his criminal history score from "C" to "A."

May asserts that K.S.A. 21-4711(d) is unconstitutional because it allows a judge to determine whether a prior burglary was of a dwelling or of some other building. Citing *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), May contends he is entitled to have a jury determine beyond a reasonable doubt whether the burglaries were of a dwelling. We think not. May pled guilty to the two prior burglaries. By his guilty plea, May admitted all well-pled facts alleged in the charging document. See *State v. Dunham*, 213 Kan. 469, 476, 517 P.2d 150 (1972).

The case of *United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1196-97 (9th Cir. 2006), is instructive. In *Guerrero-Velasquez*, the court found that the defendant had burglarized a dwelling when he pled guilty to the charge that he " 'enter[ed] or remain[ed] unlawfully in a building located at 1405 Landon Avenue, Yakima, Washington, the residence of Rena Ramirez.' " 434 F.3d at 1197.

In Kansas, a dwelling for purposes of our burglary statutes is any building intended and fit for human habitation. *State v. Alvis*, 30 Kan. App. 2d 889, 891-92, 53 P.3d 1232 (2002). In 1980 May admitted to burglarizing "the house of Earl R. McCauley located at

5536 Goodman" and "the house of Frank B. Wright, 19004 Lawrence Street" and stealing from them various household goods and personal effects such as a television set, eight track tape player, stereo equipment, a banjo, cameras, lenses and a flash attachment, jewelry, watches, and an electric razor. By pleading guilty to these facts, May admitted that his prior burglaries were of dwellings. There is no need for a jury to make this determination. Besides, whether May's prior burglaries were of a dwelling is a sentencing factor and not an element of the present crime so as to invoke the provisions of *Apprendi*. See *State v. Ivory*, 273 Kan. 44, 41 P.3d 781 (2002).

As a final point on this issue, May contends that the mere use of his criminal history to enhance his sentence violates the principles of *Apprendi*. The issue was decided against him in *Ivory*, and we are bound by the decision in *Ivory* since our Supreme Court gives no sign of intending to depart from it. See *State v. Farmer*, 285 Kan. 541, 555, 175 P.3d 221 (2008); *State v. Singleton*, 33 Kan. App. 2d 478, 488, 104 P.3d 424 (2005).

## Order for Attorney Fees

The journal entry memorializing the proceedings at May's sentencing hearing contains the following: "Defendant is to pay attorney fees as determined by the Court." The journal entry does not set the specific amount of the fees. The flaw in the process does not come from the fact that no mention was made of these fees at the sentencing hearing, as May alleges. While a criminal sentence is controlled by the court's pronouncement from the bench at the sentencing hearing, the imposition of attorney fees is not part of the defendant's punishment for criminal conduct and, therefore, not part of the sentence. See *State v. Robinson*, 281 Kan. 538, 543, 132 P.3d 934 (2006). Rather, the flaw in the process here is the failure of the court to make the necessary financial inquiry required by the recoupment statute before ordering the repayment of any fees. See 281 Kan. 538, Syl. ¶ 1. Before ordering May to pay attorney fees, the district court was required to comply with K.S.A. 22-4513 and *Robinson*. Accordingly, we must set aside this order for fees and remand for consideration of May's financial circum-

stances in order to determine the appropriateness of assessing attorney fees against him.

Affirmed in part, vacated in part, and remanded with directions.