NOT DESIGNATED FOR PUBLICATION

No. 108,360

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH D. VANHOOZIER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; MARK S. BRAUN, judge. Opinion filed January 29, 2016. Affirmed in part, reversed in part, vacated in part, and remanded with directions.

*Adam D. Stolte*, of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin*, assistant district attorney, *Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before SCHROEDER, P.J., PIERRON, J., and HEBERT, S.J.

PIERRON, J.:  Kenneth D. Vanhoozier appeals his conviction for aggravated burglary and misdemeanor theft. Vanhoozier challenges the sufficiency of the evidence supporting his aggravated burglary conviction, alleges the trial court should have given a compulsion jury instruction, and argues the cumulative effect of these errors requires a new trial. He also challenges the use of a prior 1979 person felony conviction in his criminal history. We reverse the conviction for aggravated burglary, vacate the sentence imposed, and remand the case with directions to enter an order finding Vanhoozier guilty

1

of the lesser included offense of burglary, and for resentencing on the conviction of burglary.

Sofia Javier lived in a cottage on Southwest 37th Street in Topeka. Her boyfriend, John Bui, lived in Wichita. On December 6, 2011, Javier and Bui were in Wichita when Bui received a phone call that unauthorized purchases were being made on his credit card. Bui thought he had left his credit card on the microwave at Javier's cottage. Javier called her landlords, Larry and Rachel Hargreaves, who lived in the main house at 37th Street and asked them to check the cottage. The Hargreaves noticed a cottage window was open and realized the place had been burglarized. They called the police. In a phone conversation with Bui, police officers determined that Bui's truck and firearms, among other things, were missing and it was apparent the cottage had been ransacked. The police secured the cottage and told Javier she could not make a report until she was present.

Javier and Bui arrived in Topeka around 6:30 p.m. It was already dark. Javier had called the police when they were just outside of Topeka and asked to meet them at the cottage. When they arrived home, the couple spoke briefly with Larry and Rachel and Allen Hargreaves, who lived in Larry's basement. Javier opened the gate on the privacy fence leading back to the cottage. She immediately saw someone inside the cottage. The door was open and her TV was on the porch. She screamed and immediately dialed 911.

The person inside the cottage quickly shut the door. Bui ran to the back door of the cottage to prevent the intruder from escaping. He shined his flashlight in the window, banged on the back door, and yelled that he had a gun to keep the intruder inside. Larry, Allen, and Rachel attempted to enter the cottage from the front door, but the intruder tried to keep the door shut. Eventually, they pushed their way inside. Javier testified it sounded like a struggle was going on in the cottage. The police arrived shortly thereafter. She told them the intruder was inside the cottage and Larry possibly had him at gunpoint. She said

2

the cottage was ransacked and it was not that way when she had left to visit Bui in Wichita. At trial, Javier identified Vanhoozier as the intruder.

At trial, Larry testified Vanhoozier was never outside of the cottage but was standing in the doorway. Vanhoozier attempted to shut the door, but Larry was able to push the door open. Once inside, Larry put his gun in Vanhoozier face, told him to put his hands in the air, and get on the floor. He was afraid Vanhoozier had a weapon. Larry and Allen struggled with Vanhoozier and Larry hit him over the head with a wine bottle several times.

Officer Scott McEntire of the Topeka Police Department responded to the burglary-in-progress call at Javier's cottage. He heard a commotion coming from the cottage and was informed that someone was armed. He heard Allen yell, "Shoot him." When he entered the cottage, he saw three people—one was lying on the ground, another was on top of him, and the third was holding a handgun, standing over both of them. Larry dropped the gun, put his hands in the air, and shouted that he was the victim. Officer McEntire handcuffed Vanhoozier, who was bleeding.

Vanhoozier took the stand in his own defense. He testified he had been down on his luck—his truck would not start and he had been evicted from his apartment. Vanhoozier met up with a recent acquaintance, Dustin Young, at a local convenience store. Vanhoozier told Young about his truck problems. Young offered to help and also give him $20 if he would help Young move his big screen television out of his girlfriend's house. Vanhoozier agreed and they got into what Vanhoozier thought was Young's truck.

Vanhoozier said everything seemed legitimate because Young used a key to enter Javier's cottage. He said they moved the large television outside onto the porch and Young went to get the truck. However, as he waited, he heard a woman scream and he

3

assumed it was Young and his girlfriend arguing. A few minutes later, a large, bald man ran up to the porch waiving a gun and yelling at him about where were the truck and guns that he had taken from the house. Vanhoozier said the man pointed the gun in his face and told him to get on the ground. He told the man he would sit on the porch step. Vanhoozier testified the man then told him to get inside the house. After he refused, the man and another man grabbed him and dragged him inside the cottage. Once inside the house, the two men hit and beat him causing two large cuts on his head, broken teeth, a split lip, a swollen eye, and a puncture wound in his knee. Vanhoozier testified it was not his intent to go into the house and steal property. Officers later found Young in Bui's truck. He had Bui's credit cards and the guns that were stolen from Javier's cottage.

Vanhoozier requested a compulsion instruction arguing that he had been forced into the house by Larry. The trial court denied the instruction. A jury found Vanhoozier guilty on both counts. Because of his criminal history, which included among other crimes, a 1979 conviction for aggravated robbery, Vanhoozier's criminal history classification was category C. The trial court sentenced Vanhoozier to a consecutive prison sentence of 57 months for aggravated burglary and 12 months for theft. Vanhoozier appeals.

Vanhoozier first argues the State produced insufficient evidence that he committed an aggravated burglary. However, the State responds it presented sufficient evidence to support the conviction. We find Vanhoozier was guilty of the lesser included offense of burglary as stated in jury instruction 10, not aggravated burglary.

> "When the sufficiency of the evidence is challenged in a criminal case, this court reviews the evidence in a light most favorable to the State to determine whether a rational factfinder could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.] An appellate court does not reweigh evidence, resolve conflicts in the evidence, or pass on the credibility of witnesses. [Citation omitted.]" *State v. McClelland*, 301 Kan. 815, 820, 347 P.3d 211 (2015).

4

In this case, aggravated burglary is "without authority, entering into or remaining within any building . . . in which there is a human being with intent to commit a felony, theft or sexually motivated crime therein." K.S.A. 2014 Supp. 21-5807(b). Here, the trial court permitted two alternative jury instructions on aggravated burglary—the first was that Vanhoozier "knowingly entered a building, to wit: a residence" without authority and that at the time Larry Hargreaves was in the residence; and the second was that Vanhoozier "knowingly remained in a building, to wit: a residence" without authority and that at the time Larry Hargreaves was in the residence. The jury convicted Vanhoozier under the first instruction, namely that he entered a building without authority when Larry Hargreaves was in the residence.

The purpose of the distinction between simple burglary and aggravated burglary is to recognize as a more serious crime those burglaries that can result in a dangerous and unexpected confrontation between the burglar and an occupant. See *State v. Fondren*, 11 Kan. App. 2d 309, 310-12, 721 P.2d 284, *rev. denied* 240 Kan. 805 (1986). In *State v. Reed*, 8 Kan. App. 2d 615, 616, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983), the court observed:

> "The purpose behind the aggravated burglary statute is to describe a more serious offense than simple burglary when there is the possibility of contact between the victim and the burglar and the accompanying potential for a crime against the person to occur. This danger is just as great regardless of when during the burglary the victim comes to be in the building. . . . [T]he severity of the crime depends upon the mere presence or absence of any human being in the same structure."

Vanhoozier argues that his unauthorized presence in the cottage and the presence of others did not, at any time, coexist. His defense was that he never intended to commit a theft but he was merely in the wrong place at the wrong time because of his generosity in trying to help a friend. He argues that even looking at the evidence in the light most

5

favorable to the State, sufficient evidence existed only to support a burglary but the jury did not make that finding.

Vanhoozier focuses our attention on *State v. Gutierrez*, 285 Kan. 332, 172 P.3d 18 (2007), to support his argument that he may have initially been unauthorized to enter into the residence, but that he was given permission to remain in the building by the owner. *Gutierrez* involved a domestic situation where a husband was subject to a restraining order but nevertheless went to his estranged wife's house in violation of the order. He arguably received permission from his wife to go into the house so they could talk. Unfortunately, the conversation ended in Gutierrez choking his wife into unconsciousness. Gutierrez insisted that any intent to commit the felony of attempted voluntary manslaughter was not concurrent with either unauthorized entry into the apartment or unauthorized refusal to leave it. Rather, the heat of passion or sudden quarrel motivating his throttling of his wife arose later in time.

Gutierrez challenged the sufficiency of the evidence to establish his guilt for aggravated burglary because he claimed the evidence did not show that his intent to commit the underlying felony was concurrent with either an unauthorized entry into his wife's apartment or a refusal to leave it. Our Supreme Court began its analysis by explaining that while the "'entering into'" and "'remaining within'" elements of aggravated burglary refer to "legally distinct factual situations," they are not "inevitably mutually exclusive" or necessarily instantaneous. 285 Kan. at 337. For purposes of this case, the *Gutierrez* court commented: "It also is conceivable that a defendant who is unauthorized to enter into a building may be granted permission to remain within and then be subject to later revocation of that permission." 285 Kan. at 337.

From the timing arguments in *Gutierrez*, Vanhoozier contends the elements of unauthorized entry and the presence of other people did not coincide and therefore there was insufficient evidence of aggravated burglary. However, aggravated burglary does not

require proof that the defendant knew there was a person present in the building at the time it was burgled. The mere presence of a person at any time during the crime is sufficient. See *State v. Watson*, 256 Kan. 396, 400-01, 885 P.2d 1226 (1994); *State v. May*, 39 Kan. App. 2d 990, Syl. ¶ 1, 186 P.3d 847, *rev. denied* 287 Kan. 768 (2008) ("entry of a person into a building at any time during the course of a burglary constitutes presence and is sufficient to establish aggravated burglary"); *Fondren*, 11 Kan. App. 2d at 311.

Several cases are instructional on the occupancy (another person's presence) requirement of aggravated burglary. In *May*, the defendant was burglarizing a newly constructed home when the owner returned. The defendant told the owner that he was there to complete the pool and landscaping, but he then ran off when the owner saw a tub full of the family's electronics in the kitchen. The *May* court held there was sufficient evidence to convict May of aggravated burglary and that the trial court also did not err in refusing to instruct the jury on simply burglary. 39 Kan. App. 2d at 992-94, 995-96.

In *Reed*, 8 Kan. App. 2d 615, the defendants had aided and abetted a man who entered into an unoccupied residence. The owner returned home while the man was still inside. The charging document, alleging defendants aided and abetted aggravated burglary, omitted the "remaining within" language. On appeal, the defendants in *Reed* challenged their conviction, arguing the crime, as stated in the charging document, could not be proven because the house was unoccupied at the time of the unauthorized entry. The *Reed* court examined the occupancy element of aggravated burglary and held the crime occurs whenever a human being is present in the structure during the course of the burglary. 8 Kan. App. 2d at 618. The charging document need not specify the point in time at which a person was present; it merely must allege that a person was present sometime during the course of the burglary. 8 Kan. App. 2d at 618-19.

7

In *Fondren*, 11 Kan. App. 2d at 310, this court again held the crime of aggravated burglary requires the place of the burglary to be occupied by a human being at some point during the course of the burglary. In doing so, this court quoted the following note from PIK Crim. 2d 59.18 (now PIK Crim. 4th 58.130): "When a person enters the premises after the burglary has commenced but before the defendant has left the premises, the offense constitutes aggravated burglary." 11 Kan. App. 2d at 311. Fondren stole a purse from a school closet during school hours and was confronted by a teacher before he ran off with the purse. The *Fondren* court stated: "The *unexpected confrontational situation* between the defendant and the teacher is precisely what the more serious offense of aggravated burglary is designed to protect against." (Emphasis added.) 11 Kan. App. 2d at 311-12.

However, we find the evidence, even viewing it in the light most favorable to the State, does not support a conviction for aggravated burglary—simple burglary, as provided in the lesser included instructions, but not aggravated burglary. We find the aggravated burglary statute, K.S.A. 2014 Supp. 21-5807(b), was not intended to apply to these types of facts. We acknowledge the above authority states that the mere presence of a burglar and another noncriminal person at any time during the crime is sufficient. See *May*, 39 Kan. App. 2d at 993. Vanhoozier was never authorized to be inside the cottage. However, where another person is physically forcing a burglar to remain in the premises or doing it at gun point, does not create an occupancy situation for aggravated burglary. Rather, what occurred in this case was the discovery of a burglary in progress while no one other that the burglar was present in the house and then the home owners taking it upon themselves to essentially arrest him. The situation was a detention of a burglar until the police arrived.

We conclude Vanhoozier was not guilty of aggravated burglary as contemplated in K.S.A. 2014 Supp. 21-5807(b). However, removing the occupancy element, he is still

guilty of burglary because of his unauthorized entry and presence and should be resentenced accordingly.

Next, Vanhoozier argues the cumulative effect of the errors alleged on appeal deprived him of a fair trial.

When considering the cumulative effect of errors, the reviewing court has unlimited review. *State v. Williams*, 299 Kan. 1039, 1050, 329 P.3d 420 (2014). The cumulative error analysis requires the reviewing court to aggregate all the errors, including the ones deemed harmless, and determine whether collectively the errors were harmful. *State v. Tully*, 293 Kan. 176, 205, 262 P.3d 314 (2011). Essentially, the question is whether the defendant's right to a fair trial was violated by the cumulative effect of the errors. 293 Kan. at 205. In determining whether the defendant's right to a fair trial was violated, we apply the totality of the circumstances test. See *State v. Dixon*, 289 Kan. 46, 71, 209 P.3d 675 (2009).

While there was error in allowing the aggravated burglary charge to go to the jury because of the force used by Larry and Allen to get Vanhoozier to remain in the residence, as we indicated above there was sufficient evidence to support a conviction for burglary. There was not sufficient evidence for aggravated burglary. Because the conviction is being reduced to burglary, there is no cumulative error which needs to be corrected.

Last, Vanhoozier argues the trial court erred in classifying his 1979 aggravated burglary conviction as a person felony.

Vanhoozier's presentence investigation report cited, along with multiple recent convictions, a 1979 conviction for aggravated robbery as a person felony and a 1976 conviction for forgery as a nonperson felony. The trial court determined Vanhoozier's

9

criminal history score was category C. Vanhoozier did not challenge the person/nonperson designation of his criminal history at sentencing, but an incorrect criminal history score results in an illegal sentence. See *State v. Neal*, 292 Kan. 625, 630-31, 258 P.3d 365 (2011). And an illegal sentence claim may be raised for the first time on appeal. See K.S.A. 22-3504(1); *State v. Kelly*, 298 Kan. 965, 975-76, 318 P.3d 987 (2014). Because this question concerns the interpretation of a statute, we exercise unlimited review. *State v. Eddy*, 299 Kan. 29, 32, 321 P.3d 12, *cert. denied* 135 S. Ct. 91 (2014).

In *State v. Murdock*, 299 Kan. 312, Syl. ¶ 5, 323 P.3d 846 (2014), *modified by Supreme Court order* September 19, 2014, *over ruled by State v Keel*, 302 Kan. 560, 357 P.3d 251 (2015), the Supreme Court held that for criminal history purposes, all out-of-state crimes committed before the enactment of the Kansas Sentencing Guidelines Act in 1993 must be classified as nonperson felonies. The Court of Appeals then determined that *Murdock* did not overrule its decisions regarding in-state pre-1993 crimes. See *State v. Waggoner*, 51 Kan. App. 2d 144, 154, 343 P.3d 530, *rev. denied* 303 Kan. ___ (December 29, 2015). We determined whether a prior in-state crime should be classified as a person or nonperson crime by focusing on the nature of the offense as established by the elements of the crime in the statute in effect on the date the defendant committed that prior crime. 51 Kan. App. 2d at 156-57.

In *Keel*, 302 Kan. at 589-90, the court overruled *Murdock*, holding: "[T]he classification of a prior conviction or juvenile adjudication as a person or nonperson offense for criminal history purposes under the KSGA is determined based on the classification in effect for the comparable Kansas offense at the time the current crime of conviction was committed."

The *Keel* court's rationale focused on the "fundamental rule of sentencing that the penalty parameters for a crime are established at the time the crime was committed." 302

10

Kan. 560, Syl. ¶ 9. *Keel* clarified that the classification of all in-state and out-of-state pre-KSGA convictions is to be determined by looking to the statute criminalizing the prior offense (if in state) or to the comparable offense statute (if out of state) in effect on the date the defendant committed the current crime of conviction. See 302 Kan. 560, Syl. ¶¶ 8-9.

> "In this case, however, given the overall design and structure of the KSGA, we have determined that the legislature's failure to include a specific provision describing how to score prior pre-KSGA in-state convictions or juvenile adjudications is inconsequential. The provisions of the KSGA itself as explained below instructed that prior convictions or adjudications be classified at the time of the current crime of conviction." 302 Kan. at 573.

Vanhoozier challenges the use of his 1979 in-state conviction of aggravated robbery. In accordance with the rule in *Keel*, we look to the aggravated robbery statute on the date Vanhoozier committed his current crime of conviction—December 6, 2011. On that date, aggravated robbery was classified as a person felony. See K.S.A. 2014 Supp. 21-5420(c)(2). Therefore, the trial court properly classified Vanhoozier's pre-1993 conviction of aggravated robbery as a person felony.

The conviction for aggravated burglary is reversed, the sentence imposed is vacated, and the case remanded with directions to enter an order finding Vanhoozier guilty of the lesser included offense of burglary, and for resentencing on the conviction of burglary.

Affirmed in part, reversed in part, vacated in part, and remanded with directions.

11