IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,716

STATE OF KANSAS,
*Appellee*,

v.

MICHAEL C. DAWS,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2015 Supp. 21-5807(b), aggravated burglary is defined as "knowingly and without authority entering into or remaining within any building . . . in which there is a human being, with intent to commit a felony . . . therein." As used in the statute, the phrases "entering into" and "remaining within" each refer to a legally distinct factual situation. The entering into element is satisfied when the evidence shows a defendant crossed the plane of a building's exterior wall. Remaining within refers to a defendant's presence in the building's interior after entry, authorized or unauthorized, has been accomplished.

2.

K.S.A. 2015 Supp. 21-5807(b) requires a human being's presence in the dwelling, but the crime can be committed either by entering into or remaining within the structure.

3.

When the defendant is charged only with the entering into means of committing aggravated burglary, the human being must be present at the time of entry. The contrary

1

holdings of *State v. Reed*, 8 Kan. App. 2d 615, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983), and its progeny are overruled.

Review of the judgment of the Court of Appeals in an unpublished opinion filed November 1, 2013. Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed February 19, 2016. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed, and the challenged conviction is reversed.

*Peter Maharry*, of Kansas Appellate Defender Office, argued the cause, and *Lydia Krebs*, of the same office, was on the brief for appellant.

*Edmond D. Brancart*, chief deputy district attorney, argued the cause, and *Christopher Mann*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BILES, J.:  There are two ways of committing aggravated burglary under K.S.A. 2015 Supp. 21-5807(b):  a person can either "enter into" or "remain within" the dwelling. Michael C. Daws was convicted of aggravated burglary after a homeowner returned to discover the front door kicked in and Daws inside. The jury was instructed it had to find Daws "knowingly entered . . . a residence . . . without authority . . . with the intent to commit theft . . . *at the time there was a human being in the dwelling*." (Emphasis added.) In other words, the jury was instructed as to the first of the two ways of committing aggravated burglary. Daws argues his conviction should be reversed because the evidence is undisputed that the homeowner was not in the dwelling when he entered it.

The Court of Appeals affirmed his conviction based upon its existing caselaw that the victim does not have to be in the dwelling at the time defendant enters it—so long as the victim arrives before defendant leaves. *State v. Daws*, No. 108,716, 2013 WL

2

5925960, at *3-5 (Kan. App. 2013) (unpublished opinion), *rev. granted* January 15, 2015. A majority of this court reverses the aggravated burglary conviction and overrules the line of cases the *Daws* panel relied on. See *State v. May*, 39 Kan. App. 2d 990, Syl. ¶ 1, 186 P.3d 847, *rev. denied* 287 Kan. 768 (2008); *State v. Romero*, 31 Kan. App. 2d 609, 610-12, 69 P.3d 205 (2003); *State v. Fondren*, 11 Kan. App. 2d 309, 310-12. 721 P.2d 284, *rev. denied* 240 Kan. 805 (1986); *State v. Reed*, 8 Kan. App. 2d 615, 616-19, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983). Under the aggravated burglary statute and these facts, the State should have charged Daws with "remaining within" the dwelling, which it did not do.

FACTUAL AND PROCEDURAL BACKGROUND

During the middle of the day on November 20, 2011, Raul Flores Ramos stopped by the house he was moving out of. The front door was shut, but it had been kicked in and the door jamb broken. He entered and discovered Daws in the living room. Ramos told Daws to leave, and Daws complied. Afterwards, Ramos discovered some boxes had been moved around and property removed from them. Ramos also noticed two grocery bags containing property that did not belong to him. The State charged Daws with aggravated burglary based on the intent to commit theft. The information alleged Daws "did unlawfully without authority *enter into a building* . . . which is a dwelling, in which there was a human being, to wit:  Raul Flores, with the intent to commit a theft therein." (Emphasis added.)

At trial, Daws admitted he was in the house. He testified he saw someone kick in the front door, followed that person inside, and then stayed for a night because he thought the house was abandoned. Daws confirmed Ramos found him inside the next day and that he left when asked. Daws testified he never intended to take any property.

3

At the jury instruction conference, Daws requested a lesser included offense instruction for simple burglary because the victim was not in the house when Daws entered it. The State argued it did not matter when the victim was in the house as long as he was there while the burglary was occurring. The district court refused the simple burglary instruction, noting "the caselaw does not differentiate" between circumstances when the victim was present at the time of entry or arrived later.

Consistent with the charge as described in the information, the jury was instructed on aggravated burglary based on the State's theory that Daws "knowingly entered a building" without authority. This instruction was consistent with PIK Crim. 4th 58.130, and stated in relevant part:

> "To establish this charge, each of the following claims must be proved:
> 1. That the defendant knowingly entered a building . . . which is a dwelling;
> 2. That the defendant [ ] Daws did so without authority;
> 3. That the defendant did so with the intent to commit Theft therein;
> 4. That at the time there was a human being in the dwelling, to-wit: Raul Flores; and
> 5. That this act occurred on or about the 20th day of November, 2011, in Wyandotte County, Kansas."

The district court also issued what is referred to as the any/any reasonable doubt instruction, which states in relevant part:

> "The test you must use in determining whether the defendant is guilty or not guilty is this: If you have a reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you must find the defendant not guilty. If you have no reasonable doubt as to the truth of *any* of the claims required to be proved by the State, you should find the defendant guilty." (Emphasis added.)

4

The jury convicted Daws of aggravated burglary. The district court sentenced Daws to the standard term in the applicable grid box, factoring in his criminal history score.

Daws timely appealed to the Court of Appeals, raising five issues: (1) There was insufficient evidence of aggravated burglary because the victim was not present upon entry; (2) the district court should have instructed the jury on simple burglary; (3) the district court erroneously denied a motion for mistrial; (4) the jury was improperly instructed on reasonable doubt; and (5) the district court violated *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used Daws' criminal history to enhance his sentence. The Court of Appeals affirmed in *Daws*, 2013 WL 5925960, at *5-9.

Daws petitioned for this court's review of all his claims except the denial of the motion for mistrial. We granted review, and jurisdiction is proper. See K.S.A. 60-2101(b) (review of Court of Appeals decisions).

Before proceeding, we note the last two issues have already been decided adversely to Daws in other cases. We upheld the "any/any" reasonable doubt instruction in *State v. Herbel*, 296 Kan. 1101, 1124, 299 P.3d 292 (2013) ("While the older PIK instruction used in Herbel's trial was not the preferred instruction, it was legally appropriate."). And, as Daws concedes, this court has repeatedly held the State is not required to prove a defendant's criminal history to the jury beyond a reasonable doubt. See, *e.g.*, *State v. Hall*, 298 Kan. 978, Syl. ¶ 6, 319 P.3d 506 (2014). We dispose of those latter two issues based on these prior decisions.

5

Aggravated burglary requires a human being's presence in the dwelling, but the crime can be committed either by "entering into" or "remaining within" the structure. Since Daws was convicted under the "entering into" means, the issue is whether his conviction must be reversed because there was no human being present in the house when he entered it.

*Standard of Review*

When sufficiency of the evidence is challenged, an appellate court reviews all evidence in a light most favorable to the prosecution. The court must be convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations. *State v. Williams*, 299 Kan. 509, 525, 324 P.3d 1078 (2014).

*Discussion*

The distinction between burglary and aggravated burglary is that aggravated burglary requires an additional element—the presence of a human being. Compare K.S.A. 2015 Supp. 21-5807(a) and K.S.A. 2015 Supp. 21-5807(b). The aggravated burglary statute provides:

> "Aggravated burglary is, without authority, *entering into or remaining within* any building, manufactured home, mobile home, tent or other structure, or any vehicle, aircraft, watercraft, railroad car or other means of conveyance of persons or property *in which there is a human being* with intent to commit a felony, theft or sexually motivated crime therein." (Emphasis added.) K.S.A. 2015 Supp. 21-5807(b).

"[T]he phrases 'entering into' and 'remaining within' refer to legally distinct factual situations." *State v. Gutierrez*, 285 Kan. 332, Syl. ¶ 2, 172 P.3d 18 (2007). Stated another way, these phrases constitute alternative means of committing the crime. *State v. Frierson*, 298 Kan. 1005, 1011, 319 P.3d 515 (2014). The entering into element is satisfied when the evidence shows a defendant crossed the plane of a building's exterior wall. In contrast, the remaining within element refers to a defendant's presence in the building's interior after entry has occurred. *Gutierrez*, 285 Kan. at 337. Both situations may take longer than a mere moment, but "remaining within connotes at least briefly continuous behavior." 285 Kan. at 337-38.

The focus on these alternative means is dictated by the State's decision to prosecute Daws for unlawfully entering the dwelling, as opposed to pursuing the alternate approach that Daws committed aggravated burglary by remaining within the dwelling. He argues that under the State's entering into theory, a human being must be present when the defendant enters the building. And since it is undisputed that the homeowner was not present when Daws entered, he contends there is insufficient evidence to support his conviction.

The Court of Appeals caselaw the *Daws* panel relied on to affirm the conviction under these facts stems from *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1973). In *Lora*, the defendant was convicted of two counts of aggravated burglary based on a fact pattern in which Lora was lying in wait to commit rape when the victims returned home. Lora argued it was error to convict him of aggravated burglary because there were no persons present when he entered the house. The *Lora* court quickly disposed of this challenge based on the language of the aggravated burglary statute.

It held the convictions were proper because of "the provision in this statute which in the alternative proscribes knowingly and without authority 'remaining within any

7

building . . . in which there is some human being, with intent to commit a felony . . . [therein.]'" 213 Kan. at 195. Notably, the *Lora* court did not address how the jury was instructed, but an earlier portion of the decision indicates the State charged both means. Accordingly, the *Lora* court's holding, at the very least, implies that the person must be present at the time of entry when convicting under the entering into means. Otherwise, it would have been unnecessary to cite the remaining within means of committing aggravated burglary to uphold Lora's conviction. See 213 Kan. at 195. This would seem to answer the question presented, but the Court of Appeals interpreted *Lora* differently when presented with this issue in *Reed*, 8 Kan. App. 2d 615, and that interpretation has been applied by that court ever since.

In *Reed*, the homeowner returned to discover burglars, and the two defendants were charged with aiding and abetting "'entering into a building . . . occupied during the time of said entrance'"—even though the State conceded no one was inside when the burglars entered. 8 Kan. App. 2d at 616. A divided panel upheld the convictions, holding that a charge of aggravated burglary "need not specify the point in time at which a victim was present *so long as it is alleged that a human being was present sometime during the course of the burglary*." (Emphasis added.) 8 Kan. App. 2d at 618-19.

The majority relied on dicta from a different issue in *Lora* distinguishing between aggravated burglary and burglary based on the additional requirement that the place be occupied "'during the course of the burglary.'" 8 Kan. App. 2d at 617. And this language was taken out of context and was seemingly viewed as meaning that the aggravated burglary continues until the burglar vacates the premises. The majority also referred to the PIK instruction Notes on Use that stated: "'When a person enters the premises after the burglary has commenced but before the defendant has left the premises, the offense constitutes aggravated burglary.'" 8 Kan. App. 2d at 617 (quoting PIK Crim. 2d 59.18, Notes on Use).

8

Notably, this PIK statement remains in the current version of the instruction and suffers from a lack of citation to any authority. See PIK Crim. 4th 58.130, Notes on Use. But the statement does not misstate the law because, as this court held in *Lora*, aggravated burglary has been committed if a person enters before the defendant leaves under the remaining within means. 213 Kan. at 195. Nevertheless, the PIK statement is confusing because it fails to distinguish between the two means of committing aggravated burglary. In other words, the statement is too broad if read to apply to both means, which appears to be how the *Reed* panel interpreted it.

Regarding *Lora*, the *Reed* majority held:  "Despite *Lora's* apparent reliance on the 'remaining within' clause, it is our conclusion that the rationale of the opinion need not confine its holding." 8 Kan. App. 2d at 618. It further held that the "troublesome language of the statute" concerning remaining within relates "to the timing of the burglar's formation of intent rather than the victim's presence." 8 Kan. App. 2d at 618.

The tipping point for the *Reed* panel majority seems to be its conclusion that the victim suffers the same danger regardless of whether he or she is present when the burglar enters or when he or she arrives later. The panel wrote:

> "The purpose behind the aggravated burglary statute is to describe a more serious offense
> than simple burglary when there is the possibility of contact between the victim and the
> burglar and the accompanying potential for a crime against the person to occur. This
> danger is just as great regardless of when during the burglary the victim comes to be in
> the building. 8 Kan. App. 2d at 616.

Judge Rees dissented. He would have held there was insufficient evidence of aiding and abetting aggravated burglary because the victim was not present when the burglars entered the building. 8 Kan. App. 2d at 622. (Rees, J. dissenting). And he

9

criticized the majority for suggesting the burglary was not completed until the accused exits the premises, noting this conflicted with the statute's plain language. 8 Kan. App. 2d at 622-23. Judge Rees would have held that the statute requires the victim's presence at the time the defendant enters when convicting under the entering into means. 8 Kan. App. 2d at 624 ("The temporal requirement concerning the presence of the [victim] is precisely the link that elevates a burglary to an aggravated burglary.").

Judge Rees' dissent never gained traction. Subsequent decisions from the Court of Appeals, including *Daws*, have followed *Reed*. See *May*, 39 Kan. App. 2d at 993; *Romero*, 31 Kan. App. 2d at 610-12; *Fondren*, 11 Kan. App. 2d at 310-12; *State v. Montgomery*, No. 108,164, 2014 WL 349558, at *4-6 (Kan. App. 2014) (unpublished opinion), *petition for rev. filed* March 3, 2014; *Daws*, 2013 WL 5925960, at *3-5.

Even so, the rule has differed slightly between panels and that suggests an infirmity. For example, the *May* panel stated:  "We have consistently held that the presence of a person in a structure at any time during a burglary constitutes aggravated burglary." 39 Kan. App. 2d at 993. While in *Fondren*, the panel held that "[t]he occupancy requirement is satisfied so long as there are human beings present when the ulterior felony or theft is committed." 11 Kan. App. 2d at 311. Both rationales are questionable although the flaw is more obvious in *Fondren*, which undeniably reads an element into aggravated burglary that is not present—the commission of the ulterior felony. It becomes clear that the *May* panel's holding suffers from the same flaw when one attempts to define "during a burglary." Such statements suggest aggravated burglary is not complete until the defendant vacates the premises, which is contrary to the statute's plain language. See K.S.A. 2015 Supp. 21-5807(b).

As charged and instructed in this case, aggravated burglary is defined as "without authority, entering into . . . any building . . . in which there is a human being with intent

10

to commit . . . theft . . . therein." K.S.A. 2015 Supp. 21-5807(b) (no charge on instruction made for remaining within). A defendant is not required to commit the ulterior crime to complete the aggravated burglary. See K.S.A. 2015 Supp. 21-5807(b); see also *State v. Shinn*, No. 112,118, 2015 WL 4366534, at *3 (Kan. App. 2015) (unpublished opinion) (holding the defendant "did not have to successfully commit a theft; he only had to intend to do so" to commit aggravated burglary). And because aggravated burglary is complete once unauthorized entry occurs, the Court of Appeals view impermissibly extends the crime until the burglar leaves or completes the ulterior felony. See *State v. Phillips*, 295 Kan. 929, 944-45, 287 P.3d 245 (2012) (aggravated robbery complete when defendant takes possession of victim's property, so prosecutor's closing argument misstated the law by saying crime not complete until defendant left the premises).

It is "a basic premise of Anglo-American criminal law that the physical conduct and state of mind must concur." 1 LaFave, Substantive Criminal Law § 6.3(a), p. 451 (2d ed. 2003) (discussing *actus reus* and *mens rea*). In the context of aggravated burglary, this idea is embodied in this court's holdings that "[t]o support a conviction for aggravated burglary, the intent to commit a felony and the unauthorized entering into or remaining within must at some point in time coexist." *Gutierrez*, 285 Kan. at 338-39; see also *State v. Bowen*, 262 Kan. 705, 709, 942 P.2d 7 (1997) ("The specific intent in an aggravated burglary, where one is charged with entering into the dwelling without authority, must exist at the time of the unauthorized entry.").

But the aggravated burglary statute's human presence element is not governed by this rule because it does not involve the required physical conduct (entering into) or the state of mind (intent to commit the ulterior crime). The human presence element is more aptly described as an attendant circumstance. See 1 LaFave, Subst. Crim. L. § 6.3(b). When the elements of a criminal statute include an attendant circumstance, that attendant circumstances must concur with the other elements. 1 LaFave, Subst. Crim. L. § 6.3(b) p.

11

455 ("With crimes which require physical conduct, mental fault, and attendant circumstances, the circumstances must concur with the conduct and fault."). To hold otherwise collapses the two means of committing aggravated burglary.

In light of the uncontroverted testimony that Daws spent a day inside the victim's home before the homeowner returned, the remaining within means of committing aggravated burglary was the appropriate charge. Since the jury was only instructed on the entering into means of committing aggravated robbery and the victim was not present when Daws entered the residence, we hold there was insufficient evidence to sustain the aggravated burglary conviction and reverse that conviction. This necessarily requires us to overrule *Reed* and its progeny as they relate to the crime of aggravated burglary when the defendant is only charged with unauthorized entering into a building or residence and another person is not present at that time. Based on this, it is unnecessary to address the remaining issue concerning the defendant's request for a simple burglary instruction.

Accordingly, we reverse the Court of Appeals decision that affirmed the district court and reverse the challenged conviction for aggravated burglary.

* * *

LUCKERT, J., dissenting: I disagree with the majority's decisions (1) to overrule *State v. Reed*, 8 Kan. App. 2d 615, 663 P.2d 680, *rev. denied* 234 Kan. 1077 (1983), and its progeny and (2) to reverse Michael C. Daws' aggravated burglary conviction because of insufficient evidence. Not only do I disagree with the majority's reasoning that led to those decisions, I am troubled the law surrounding burglary and aggravated burglary becomes more confused under the majority's rationale.

12

I disagree with the majority's reasoning in two major respects. First, unlike the majority, I do not believe the legislature intended to create two "means" of committing burglary simply by describing two factual circumstances that amount to burglary—that is, an unauthorized presence achieved either by an entering in or remaining within. Second, I do not read K.S.A. 2015 Supp. 21-5807(b) (aggravated burglary) to require that all elements must be present at the moment a burglar crosses the plane of a dwelling's exterior wall (or that of any other structure or "means of conveyance" covered by the statute) when the State has charged only the option of "enter[ing] into." Rather, the burglary continues as long as the burglar maintains an unauthorized presence in the dwelling, another structure, or a means of conveyance. Thus, the crime can be proven by establishing a concurrence of all the elements and attendant circumstances at some point in time while the burglar remains within the structure without authority. See 3 LaFave, Substantive Criminal Law § 21.1(g) pp. 221-22 (2d ed. 2003).

With regard to the first point of disagreement of whether the two factual circumstances constitute alternative means, I recognize our past caselaw has so held. *E.g.*, *State v. Cook*, 286 Kan. 1098, 1107, 191 P.3d 294 (2008) ("Where the jury is instructed that the single offense of aggravated burglary may be committed by either the unauthorized 'entering into' or 'remaining within' a structure, an alternative means case has been presented."). But in *State v. Brown*, 295 Kan. 181, 192-200, 284 P.3d 977 (2012), we clarified the analysis for determining when the legislature intended to create an alternative means crime. We explained that phrases joined by the word "or" do not necessarily constitute alternative means. Rather, if alternatives merely describe a material element or describe the factual circumstances that can prove a material element, they are options within a means rather than alternative means.

Post-*Brown*, in *State v. Frierson*, 298 Kan. 1005, 1011, 319 P.3d 515 (2014), we noted that the State had not presented any argument that the status of aggravated burglary

13

as an alternative means crime had changed after our decision in *Brown*. Without a request to change our approach, we applied our prior holdings that aggravated burglary was an alternative means crime. Likewise, in this case, the State has not requested us to revisit our pre-*Brown* caselaw. Generally, I am reluctant to decide an issue without proper argument and consideration. But failing to consider the question in this case leads the court to reverse a long line of cases and confuses the law of aggravated burglary. Consequently, it becomes necessary to reconsider whether the phrases "entering into" and "remaining within" are truly alternative means, as opposed to being phrases that manifest the legislature's intent to describe the "material element or a factual circumstance that would prove the crime [of aggravated burglary]," *i.e.*, options within a means. See *Brown*, 295 Kan. at 200.

I reach this conclusion in part because of the prior statutory law and common law from which the current crimes of burglary and aggravated burglary descend. See K.S.A. 2015 Supp. 21-5103(a) ("No conduct constitutes a crime against the state of Kansas unless it is made criminal in this code or in another statute of this state, but where a crime is denounced by any statute of this state, but not defined, the definition of such crime at common law shall be applied."); *State v. Engel*, 166 Wash. 2d 572, 578-80, 210 P.3d 1007 (2009) (when determining if options stated in criminal provision create alternative means courts may look to common-law definition of crime to determine legislative intent); see also *Brown*, 295 Kan. at 193 (noting that Kansas has borrowed from Washington's caselaw regarding alternative means).

The statutory crime of burglary loosely descends from the crime of breaking and entering, which was recognized at common law and in early Kansas statutes. At common law, a completed crime did not occur simply by creating a breach or an opening—a breaking. Rather, the burglar had to physically intrude into the structure, even if only momentarily. Modern statutory formulae dispense with the breaking but still require an

14

entry into—in other words, a presence within a structure. Nevertheless, they uniformly convey the essence of a breaking through some word or words that require proving that the burglar's presence is not privileged. For example, statutes may use the term "unlawful," "unauthorized," "without consent," or "trespass." See 3 LaFave, Subst. Crim. L. § 21.1(a), (b), pp. 208-12. K.S.A. 2015 Supp. 21-5807(b) conveys the essence of "breaking" through the word "unauthorized" and, in my view, uses the alternatives of entering into or remaining within to explain that the burglar must assert some physical presence inside the structure.

The phrase "remaining within" expands the reach of the modern crime beyond the reach of conduct condemned at common law—that is, the mere "entering." This "statutory expansion" makes "great sense" because, as Professor LaFave explains, it allows charging burglary in a situation where an individual enters the premises with authority (such as a bank customer) but remains once that authority is withdrawn or ceases (such as when the bank customer hides until the bank closes and then steals the bank's money). 3 LaFave, Subst. Crim. L. § 21.1(b), p. 212. By expanding the criminal act, the legislature did not intend to create legally distinct crimes. Instead, the intent was to describe all surreptitious factual circumstances where the presence could become unauthorized. Put simply, there is one "means" to commit burglary—unauthorized presence—and the statute describes two options.

As this court has explained, the concepts of entering in and remaining within can overlap or be distinct—a burglar can cross the plane of the outside walls and immediately exit, can both enter and remain without authority, can enter with authority and lose permission, or can have fluctuating periods where authority is granted, taken away, and perhaps even be granted again. See *Frierson*, 298 Kan. at 1012 (quoting *State v. Gutierrez*, 285 Kan. 332, 337, 172 P.3d 18 [2007]). All of these situations involve an entry and an unauthorized presence within the structure, and the inclusion of both phrases

15

merely describes the various factual circumstance encompassed in the range of scenarios. Such descriptions of factual circumstances do not create alternative means. See *Brown*, 295 Kan. at 200.

Indeed, the factual scenario in *State v. Lora*, 213 Kan. 184, 515 P.2d 1086 (1973), which the majority discusses, amounts to reversible error under an alternative means analysis. In that case, the State charged Lora with both entering into and remaining within. Lora had waited for victims to return home in order to commit a rape, meaning there was no person present when he "entered in." Nevertheless, this court upheld his aggravated burglary conviction because there was evidence that he had "remained within." 213 Kan. at 195. Under an alternative means analysis—where evidence must support both means—Lora's aggravated burglary conviction was reversible because insufficient evidence supported the entering into means. See *Brown*, 295 Kan. at 188 (noting that charges of alternative means require substantial evidence to support each alternative means).

Under the majority's holding on the alternative means issue, however, the State cannot charge both factual descriptions in every case and rely on *Lora* to save an aggravated burglary conviction. Practically speaking, charging a clear-cut case becomes complicated by the fear that an evidentiary discrepancy about when exactly a person entered or when exactly intent formed might lead to insufficient evidence supporting one of the theories. Splitting the crime of aggravated burglary into distinct parts seems an exercise in form over substance and wipes out the "good sense" the statutory expansion was intended to accomplish.

This seems especially true in light of the continuing nature of the crime of aggravated burglary, my second point of disagreement with the majority's opinion. For three decades since *Reed*, 8 Kan. App. 2d at 618, aggravated burglary occurred

16

"whenever a human being is present in the building *during the course of the burglary*." (Emphasis added.) Now here, unlike *Reed*, the majority does not view aggravated burglary as a continuing crime. In overruling *Reed* and its progeny, the majority notes that under the entering into theory a "burglary is complete as soon as unauthorized entry occurs," regardless of whether the criminal later completes the intended ulterior crime. That is true. But that only means that at that point there is sufficient evidence to support a conviction—that does not necessarily mean the actions constituting the offense have ended. See K.S.A. 2014 Supp. 21-5807(b); see also, *e.g.*, *People v. Davis*, 18 Cal. 4th 712, 718, 76 Cal. Rptr. 2d 770, 958 P.2d 1083 (1998) ("[B]urglary is complete upon the slightest partial entry of any kind, with the requisite intent, even if the intended larceny is neither committed nor even attempted."); *State v. Office of Public Defender,* 2012-NMSC-029, ¶ 41 285 P.3d 622 (N.M. 2012) ("'The crime of burglary is complete when there is an unauthorized entry with the requisite intent.'"). I view the plain statutory language, which is contained in one sentence rather than in subparts of the statute, as describing what can be a continuous factual circumstance—an entering into along with a remaining within. See *Brown*, 295 Kan. at 196 ("[A] legislature will signal its intent to state alternative means through structure, separating alternatives into distinct subsections of the same statute.").

Indeed, "burglary is in fact a rather unique type of attempt law, as all the required elements merely comprise a step taken toward the commission of some other offense." 3 LaFave, Subst. Crim. L. § 21.1(g), pp. 221-22. Unlike other attempt laws, burglary does not merge with the completed offense. Thus, through burglary, the legislature has authorized additional punishment for the commission or attempted commission of a crime in a particular way. See *State v. McClanahan*, 251 Kan. 533, 537-38, 836 P.2d 1164 (1992) (recognizing that burglary does not merge with intended theft); 3 LaFave, Subst. Crim. L. § 21.1(g), p. 222.

17

Some crimes, by their nature, do not happen instantaneously. Because burglary is the punishment of actions taken to accomplish some other crime, it is hard to view it as something other than a crime that continues so long as those actions are ongoing. See K.S.A. 2015 Supp. 21-5107(f) ("An offense is committed either when every element occurs, or, if a legislative purpose to prohibit a continuing offense plainly appears, at the time when the course of conduct . . . is terminated."); see also *State v. Gainer*, 227 Kan. 670, 673, 608 P.2d 968 (1980) ("To constitute a continuing offense it must plainly appear in the statute defining such offense that there is a clear legislative purpose to make the prohibited course of conduct a continuing offense."); *State v. Zimmer*, 198 Kan. 479, 504, 426 P.2d 267 ("Kidnapping, which involves the detention of another, is a continuing offense."), *cert. denied* 389 U.S. 933 (1967).

The United States Supreme Court explained the concept in the context of conspiracy, which, by its nature, is a continuing crime so long as the conspirators engage in overt acts towards its commission because "each day's acts bring a renewed threat of the substantive evil Congress sought to prevent." *Toussie v. United States*, 397 U.S. 112, 122, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970). The *Reed* justification echoes that same sentiment, finding evidence sufficient to support an aggravated burglary on the entering into theory regardless of when a victim became present:

> "The purpose behind the aggravated burglary statute is to describe a more serious offense
> than simple burglary when there is the possibility of contact between the victim and the
> burglar and the accompanying potential for a crime against the person to occur. This
> danger is just as great regardless of when during the burglary the victim comes to be in
> the building." 8 Kan. App. 2d at 616.

Concededly, the *Reed* conceptualization of aggravated burglary as a continuing crime becomes strained when the focus is only on the entering into statutory language. But I read the phrases of "entering into" and "remaining within" as describing the range

of factual circumstances that can be used to prove an unauthorized presence in the structure, and I suggest the legislature intended that language to convey the continuing nature of the crime. We should recognize that the *Reed* conceptualization of aggravated burglary as—by its nature—a continuing offense made enough sense that the legislature has not changed it for decades. See *McIver v. State Highway Commission*, 198 Kan. 678, 683, 426 P.2d 118 (1967) ("The failure of the legislature to disapprove the interpretation amounts to a ratification by it."). But see *In re Adoption of J.M.D.*, 293 Kan. 153, 166, 260 P.3d 1196 (2011) ("[T]his court has not always found that legislative inaction, even for long periods of time, precludes the subsequent correction of judicially created rules which are contrary to the plainly worded statutes.").

This case illustrates how splitting aggravated burglary into distinct parts confuses the crime: Daws entered into the home when no person was present—he completed a standard burglary. Later, while Daws maintained his unauthorized presence in the home, a person came in. At that point, Daws remained within the home. Seemingly, under the majority analysis in this case, Daws committed a subsequent aggravated burglary that was factually and legally distinct from the initial burglary.

I doubt that multiple convictions for acts similar to Daws' could withstand a multiplicity analysis because I believe it was the legislature's intent to collapse the two factual circumstances, thereby generally proscribing any unauthorized presence in a building with the intent to commit a felony. See *State v. Schoonover*, 281 Kan. 453, 471-72, 133 P.3d 48 (2006) ("When the prosecution is based upon the same conduct, there can be only one conviction for that minimum unit of prosecution," which is "the nature of the conduct proscribed."). While one might argue the rule of lenity weighs in favor of reading K.S.A. 2015 Supp. 21-5807(b) to state alternative means in this case, when viewed broadly from a unit of prosecution standpoint a stronger argument can be made that lenity suggests treating the two options as descriptions of factual circumstances. I

19

find it problematic to view aggravated burglary not as a continuing crime but as a series of completed crimes.

In essence, the majority's rationale seems to interject confusion into the law surrounding the crime of aggravated burglary. I would not change the longstanding caselaw of this state, which has recognized aggravated burglary as a continuing crime, because I find the rationale in *Reed* compelling. But I would clarify the alternative means analysis in light of our decision in *Brown* to apply the legislative intent as merely describing factual circumstances rather than alternative means.

This would mean that, contrary to the majority's suggestion, the State need not prove that a person was in the dwelling at the moment Daws entered without authority. The plain language of K.S.A. 2015 Supp. 21-5807(b) does not demand the concurrence if both options are read together as allowing for a continuing act. Nor is such a reading demanded by general principles of law.

The majority cites Professor LaFave for the "basic premise of Anglo-American criminal law that the physical conduct and state of mind must concur." 1 LaFave Substantive Criminal Law § 6.3(a), p. 451 (2d ed. 2003). It then cites two cases to support its conclusion this coexistence must occur at the moment of the unauthorized entry when the State charges only the option of entering into. In one of these cases, *Gutierrez*, 285 Kan. at 338-39, the court held that "[t]o support a conviction for aggravated burglary, the intent to commit a felony and the unauthorized entering into or remaining within *must at some point in time coexist*." (Emphasis added.) This language is consistent with my reading of the statute as providing for a continuing crime and does not specifically state that intent must be present at the moment of entry. The second case does support the majority's view. See *State v. Bowen*, 262 Kan. 705, 709, 942 P.2d 7 (1997)

20

("The specific intent in an aggravated burglary, where one is charged with entering into the dwelling without authority, must exist at the time of the unauthorized entry.").

Nevertheless, the holding in *Bowen* and the view adopted by the majority ignores the point made by Professor LaFave in the two sentences that follow the one the majority quotes. He states:

"Although it is sometimes assumed that there cannot be such concurrence unless the mental and physical aspects exist at precisely the same moment in time, *the better view* is that there is a concurrence when the defendant's mental state actuates the physical conduct. That is, mere coincidence in point of time is not necessarily sufficient, while the lack of such unity is not necessarily a bar to conviction." (Emphasis added.) 1 LaFave, Subst. Crim. L. § 6.3(a), p. 451.

Professor LaFave illustrates by explaining that "[t]he physical conduct might begin first but continue until the requisite state of mind occurs." 1 LaFave, Subst. Crim. L. § 6.3(a), p. 451 n.5. He provides an example that illustrates that the various elements can occur in sequences other than only mental state actuating physical conduct. In that example of an assault case, a driver inadvertently parked a car on an officer's foot and "then, upon learning what he had done, did not move the car, as the requisite act was 'continuing.'" 1 LaFave, Subst. Crim. L. § 6.3(a), p. 451 n.5.

Here, we have evidence to support what Professor LaFave considered to be the better view, which I believe is also consistent with the plain language of the aggravated burglary statute and legislative intent. The State proved that Daws entered the dwelling without permission and during the time he was in the dwelling without authority—*i.e.*, during the time leading up to commission of the ulterior crime of theft—the other elements and attendant circumstances coincided. Daws held the intent to commit a theft while Ramos was also in the structure that Daws had entered without authority. See 1

21

LaFave, Subst. Crim. L. § 6.3(b) p. 455. I would conclude sufficient evidence supports Daws' conviction for aggravated burglary.

Daws also argues the trial court erred in failing to instruct on the lesser included offense of burglary. Daws can successfully meet the first two tests in our standard of review for an alleged failure to give a jury instruction, which is set out in *State v. Plummer*, 295 Kan. 156, Syl. ¶ 1, 283 P.3d 202 (2012): (1) Daws preserved this issue by requesting the instruction during the jury instruction conference, and (2) an instruction on burglary is legally appropriate as a lesser included offense of aggravated burglary, see K.S.A. 2015 Supp. 21-5109(b)(1) (defining lesser included offense as lesser degree of same crime); K.S.A. 2015 Supp. 21-5807 (defining burglary and aggravated burglary).

In the third step of the analysis, Daws must establish that the instruction is factually appropriate because there is "some evidence which would reasonably justify a conviction of some lesser included crime." K.S.A. 2015 Supp. 22-3414(3); *Plummer*, 295 Kan. 156, Syl. ¶ 1. Even if we assume Daws met that standard, in order for him to prevail we must determine the failure to give the lesser included instruction was not harmless, and I would not make this finding in Daws' favor. Daws did not dispute Ramos' presence in the house. The only dispute related to whether Ramos had to be present at the instant of Daws' entry into the house. Because I reject this legal argument, I would find that any error in failing to give a lesser included offense instruction regarding burglary was harmless.

In summary, there is no reasonable possibility that the jury, had it been instructed on the lesser included offense, would have found Daws guilty of burglary instead of aggravated burglary given the overwhelming evidence on the element that distinguishes aggravated burglary from burglar—the presence of a person in the dwelling. See *State v. Ward*, 292 Kan. 541, 565, 256 P.3d 801 (2011) (If an error implicates a constitutional

22

right, then "a Kansas court must be persuaded beyond a reasonable doubt that there was no impact on the trial's outcome, *i.e.*, there is no reasonable possibility that the error contributed to the verdict."), *cert. denied* 132 S. Ct. 1594 (2012); see also *State v. Brown*, 298 Kan. 1040, 1051, 318 P.3d 1005 (2014) (if constitutional harmless error standard is met, then lower statutory standard under K.S.A. 2015 Supp. 60-261 is also satisfied).

I would affirm Daws' conviction for aggravated burglary.

ROSEN and STEGALL, JJ., join in the foregoing dissenting opinion.