Nos. 115,887
115,888
115,889

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JACOB J. MCALISTER, JR.,
*Appellant*.

SYLLABUS BY THE COURT

1.

Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which an appellate court has unlimited review. Also, whether a prior conviction is properly classified as a person or nonperson crime for criminal history purposes raises a question of law subject to unlimited review.

2.

The Kansas Supreme Court has defined an "illegal sentence" as (1) a sentence imposed by the court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in the character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served.

3.

A sentence based on an incorrect criminal history score is an illegal sentence that can be corrected at any time regardless of the procedural posture of the case.

1

4.

The Kansas Supreme Court has explained that the proper classification of a prior crime as a person or nonperson felony for criminal history purposes is a question of state statutory law, not constitutional law.

5.

A defendant whose sentence is illegal based on the holding in *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015), is entitled to receive a corrected sentence at any time, even if the sentence became final prior to the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).

Appeal from Finney District Court; WENDEL W. WURST, judge. Opinion filed April 28, 2017. Sentences vacated and case remanded with directions.

*J. Scott James*, of James Law Firm LLC, of Greensburg, for appellant.

*Brian R. Sherwood*, assistant county attorney, *Susan Lynn Hillier Richmeier*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HILL, P.J., MALONE and GARDNER, JJ.

MALONE, J.:  Jacob J. McAlister, Jr., appeals the district court's decision denying his motions to correct illegal sentences filed in three criminal cases from Finney County. The district court dismissed the motions as procedurally barred, and McAlister claims on appeal that the district court erred in doing so. Conversely, the State argues that the district court did not err when it determined that McAlister's motions were procedurally barred. Specifically, the State argues that McAlister is not entitled to retroactive relief on his motions to correct his illegal sentences under *State v. Dickey*, 301 Kan. 1018, 350 P.3d 1054 (2015) (*Dickey I*), because McAlister's sentences became final prior to the decision in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435

2

(2000). We resolve this issue against the State and remand with directions for the district court to revise McAlister's criminal history scores and correct his sentences pursuant to the holding in *Dickey I* as more fully set forth in this opinion.

FACTUAL AND PROCEDURAL BACKGROUND

In early 1996, the State charged McAlister with multiple crimes in three separate cases in Finney County. In 96CR40, the State charged McAlister with multiple counts of possession of opiates, nonresidential burglary, conspiracy to commit burglary, misdemeanor theft, and criminal damage to property. In 96CR41, the State charged McAlister with two counts of aggravated robbery. Finally, in 96CR49, the State charged McAlister with one count of aggravated robbery.

The three cases were never consolidated in district court and were presented to different jury panels in August 1996. Ultimately, McAlister was convicted in 96CR40 of one count each of possession of narcotics, nonresidential burglary, misdemeanor theft, and criminal damage to property as well as three counts of conspiracy to commit burglary. McAlister was convicted of both counts of aggravated robbery in 96CR41 and one count of aggravated robbery in 96CR49.

The presentence investigation (PSI) report prepared in each case showed that McAlister had been convicted of two counts of burglary and one count of conspiracy to commit burglary in 92CR130, and each of these convictions was scored as a person felony. This resulted in a criminal history score of A in all three cases.

McAlister was sentenced in all three cases on the same day, November 8, 1996. At the sentencing hearing, McAlister objected to his criminal history score, challenging the inclusion of the two 1992 burglary convictions and one 1992 conspiracy to commit burglary conviction as person felonies. The district court overruled those objections and

3

sentenced McAlister to a controlling prison term of 52 months in 96CR40, 257 months in 96CR41, and 206 months in 96CR49. The district court ordered that the sentences from the three cases run consecutive to each other.

McAlister appealed each of his convictions and sentences to this court, and the cases were consolidated on appeal. In addition to appealing various evidentiary rulings, McAlister challenged the calculation of his sentences in the three cases, but this court affirmed both his convictions and sentences. *State v. McAlister*, No. 78,378, 1998 WL 964855 (Kan. App. 1998), *rev. denied* 266 Kan. 1113 (1999). The mandate issued on February 3, 1999.

On May 20, 2015, McAlister filed pro se motions to correct illegal sentences in each of his cases. In addition to making other arguments, McAlister relied on the decision in *State v. Dickey*, 50 Kan. App. 2d 468, 329 P.3d 1230 (2014) (subsequently affirmed in *Dickey I*) to challenge the district court's inclusion of his 1992 burglary-related convictions as person felonies in his criminal history. The State filed a written response to each motion asserting multiple arguments why the holding in *Dickey I* did not apply to McAlister's cases. Specifically, the State argued that McAlister's motions were barred by res judicata because he had challenged his sentences in his direct appeal, and the State also argued that the holding in *Dickey I* did not apply retroactively to McAlister's sentences, which were final prior to the ruling in *Dickey I*.

The district court held a hearing on McAlister's motions on October 30, 2015. After hearing arguments of counsel, the district court found that McAlister's motions were procedurally barred by res judicata and also because the holding in *Dickey I* did not apply retroactively to McAlister's sentences. McAlister timely filed a notice of appeal in each case, and the cases again have been consolidated on appeal.

4

WERE MCALISTER'S MOTIONS PROCEDURALLY BARRED?

On appeal, McAlister argues that his sentences were based on an incorrect criminal history score and thus constituted an "illegal sentence" under K.S.A. 22-3504. McAlister asserts that the district court erred in finding his motions were procedurally barred under the doctrine of res judicata. He also claims that his motions were not procedurally barred based on the application of retroactivity.

The State fails to address the res judicata issue. Instead, the State argues that the district court correctly ruled that the holding in *Dickey I* does not apply retroactively to McAlister's sentences, although the State essentially argues that the district court was correct for the wrong reason. The State argues that the holding in *Dickey I* was an application of the constitutional rule announced by the United States Supreme Court in *Apprendi* and clarified in *Descamps v. United States,* 570 U.S. ___, 133 S. Ct. 2276, 186 L. Ed. 2d 438 (2013). As a result, the State contends that McAlister is not entitled to retroactive relief under the holding in *Dickey I* because his sentences "were all final in February of 1999, long before *Apprendi* was decided on June 26, 2000."

Whether a sentence is illegal within the meaning of K.S.A. 22-3504 is a question of law over which an appellate court has unlimited review. *State v. Lee*, 304 Kan. 416, 417, 372 P.3d 415 (2016). Also, whether a prior conviction is properly classified as a person or nonperson crime for criminal history purposes raises a question of law subject to unlimited review. *Dickey I*, 301 Kan. at 1034.

McAlister's essential argument is that his criminal history score was incorrectly calculated in each of his three cases because his PSI report showed prior Kansas convictions in 1992 of two counts of burglary and one count of conspiracy to commit burglary, and each of these convictions was scored as a person felony in violation of the holding in *Dickey I*. McAlister claims that a sentence based on an incorrect criminal

5

history score constitutes an illegal sentence within the meaning of K.S.A. 22-3504. Our Supreme Court has defined an "illegal sentence" as "(1) a sentence imposed by the court without jurisdiction; (2) a sentence that does not conform to the applicable statutory provision, either in the character or the term of authorized punishment; or (3) a sentence that is ambiguous with respect to the time and manner in which it is to be served." *State v. Trotter*, 296 Kan. 898, 902, 295 P.3d 1039 (2013). As McAlister points out, K.S.A. 22-3504(1) specifically authorizes a court to "correct an illegal sentence at any time."

*We review our Supreme Court's decision in* Dickey I

We begin our analysis of McAlister's claim by reviewing the Kansas Supreme Court's decision in *Dickey I*. In that case, the defendant argued that the district court violated his constitutional rights under *Descamps* and *Apprendi* by classifying his prior 1992 Kansas juvenile adjudication for burglary as a person felony. In *Apprendi*, the United States Supreme Court held, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Descamps*, the Court determined that *Apprendi* was implicated when a district court enhanced a defendant's sentence based on a factual finding that went beyond the existence of a prior conviction and the statutory elements that comprised the prior conviction. 133 S. Ct. at 2282, 2288-89.

Our Supreme Court in *Dickey I* determined that the classification of a prior burglary conviction or adjudication for criminal history purposes is controlled by K.S.A. 2014 Supp. 21-6811(d). 301 Kan. at 1021. Under that statute, in order to classify the defendant's prior burglary adjudication as a person offense, the district court needed to find that the prior burglary involved a "dwelling." See K.S.A. 2014 Supp. 21-6811(d); K.S.A. 21-3715(a); K.S.A. 2014 Supp. 21-5807(a)(1). However, the burglary statute that formed the basis of the defendant's prior adjudication did not include an element that the

6

burglarized structure be a "dwelling." See K.S.A. 1991 Supp. 21-3715. Thus, our Supreme Court held that the district court was constitutionally prohibited from classifying the defendant's prior burglary adjudication as a person felony because doing so necessarily resulted from the district court making or adopting a factual finding (*i.e.*, the prior burglary involved a dwelling) that went beyond simply identifying the statutory elements that constituted the prior burglary adjudication. 301 Kan. 1018, Syl. ¶ 8. The court further stated that "classifying [the defendant's] prior burglary adjudication as a person felony violates his constitutional rights as described under *Descamps* and *Apprendi*." 301 Kan. at 1021. Consequently, the court concluded that the defendant's 1992 burglary adjudication should have been classified as a nonperson felony for criminal history purposes. 301 Kan. at 1021.

McAlister is in the same position as the defendant in *Dickey I*. McAlister argues that just as in *Dickey I*, because the statute which was the basis of his prior burglary convictions did not include an element that the burglarized structure be a "dwelling," the district court was constitutionally prohibited under *Descamps* and *Apprendi* from classifying the convictions as person crimes. McAlister's argument has merit assuming that the holding in *Dickey I* applies to McAlister's sentences, which were final prior to the ruling in *Dickey I*. However, the district court ruled that the holding in *Dickey I*, which was a direct sentencing appeal, did not apply retroactively to McAlister's sentences.

Our Supreme Court's holding in *Dickey I*, based on the rationale expressed by the court in its decision, appears to have been an application of the constitutional rule announced in *Apprendi* and clarified in *Descamps* that a district court cannot enhance a defendant's sentence based on a factual finding that went beyond the existence of a prior conviction and the statutory elements that comprised the prior conviction. "Generally, when an appellate court decision changes the law, that change acts prospectively and applies only to all cases, state or federal, that are pending on direct review or not final yet on the date of the appellate court decision." *State v. Mitchell*, 297 Kan. 118, Syl. ¶ 3, 298

7

P.3d 349 (2013). Under this general rule, the holding in *Dickey I* would not be applied retroactively to sentences that were final before *Dickey I* was decided and certainly not to sentences that were final before *Apprendi* was decided.

*Our Supreme Court clarifies its rationale in* Dickey I *with its decision in* Dickey II

After McAlister filed his brief in this case, but before the State filed its brief, the Kansas Supreme Court filed its decision in *State v. Dickey*, 305 Kan. 217, 380 P.3d 230 (2016) (*Dickey II*). *Dickey II* addressed the identical substantive legal question concerning the proper classification of Dickey's prior 1992 juvenile adjudication of burglary. Whereas *Dickey I* was a direct sentencing appeal, the decision in *Dickey II* was an appeal of three probation revocations that occurred long after the initial sentences in those underlying cases had passed. *Dickey II*, 305 Kan. at 219. The court observed that the parties had spent significant time contesting whether the different procedural posture of *Dickey II* dictated a different outcome from *Dickey I*. 305 Kan. at 219. The court held that it did not because the misclassification of Dickey's 1992 burglary adjudication resulted in an illegal sentence, and an illegal sentence can be corrected at any time under K.S.A. 22-3504(1). 305 Kan. at 219. As such, the court determined that the procedural distinctions the State relied on between *Dickey I* and *Dickey II* "fade to irrelevance and the substantive holding of *Dickey I* must control." 305 Kan. at 219.

In *Dickey II*, the State argued that Dickey's assertion on appeal that his sentence is illegal runs squarely into the hurdle imposed by prior Kansas Supreme Court caselaw that ""'the definition of an illegal sentence does not include a claim that the sentence violates a constitutional provision [and] a defendant may not file a motion to correct an illegal sentence based on constitutional challenges to his or her sentence.'"" 305 Kan. at 220 (quoting *State v. Moncla*, 301 Kan. 549, 553-54, 343 P.3d 1161 [2015]). In response to this argument, the court clarified that "our holding in *Dickey I* was not a repudiation of

8

the rule stated in *Moncla* that a motion to correct an illegal sentence is not a proper vehicle to assert a constitutional challenge to a defendant's sentence." 305 Kan. at 221.

The court in *Dickey II* went on to explain that the holding in *Dickey I* was not based on a constitutional challenge to the defendant's sentence because the proper classification of a prior crime for criminal history purposes is purely a matter of statutory law, not constitutional law. 305 Kan. at 221. In analyzing whether the holding in *Dickey I* was based on constitutional principles or statutory interpretation, the court stated:

> "The parties' framing of the question here as a question of constitutional law is likewise understandable, but incorrect. It is true that the methodology utilized by the State and the district court to find the additional fact that Dickey's prior burglary conviction issue involved a dwelling turned out to be constitutionally infirm pursuant to *Apprendi* and its progeny. The bulk of our opinion in *Dickey I* was spent resolving this question. However, once that question was resolved, we returned to consider the question of the proper classification of the prior crime *purely as a matter of statutory law*:
>
> > "'Under the facts of [*Dickey I*, which are also the facts of *Dickey II*], the district court was constitutionally prohibited from classifying the defendant's prior burglary adjudication as a person felony under K.S.A. 2014 Supp. 21-6811(d) because doing so necessarily resulted from the district court making or adopting a factual finding (*i.e.*, the prior burglary involved a dwelling) that went beyond simply identifying the statutory elements that constituted the prior burglary adjudication. Because burglary of a "dwelling" (as that term is defined in K.S.A. 2014 Supp. 21-5111[k]) was not included within the statutory elements making up the defendant's burglary adjudication under K.S.A. 1991 Supp. 21-3715, the burglary adjudication should have been classified as a nonperson felony for criminal history purposes.' *Dickey I*, 301 Kan. 1018, Syl. ¶ 8, 350 P.3d 1054.
> >
> > "Our holding in *Dickey I* demonstrates that the proper classification of a prior crime is exclusively a matter of state statutory law. Which is simply to reiterate that '[b]ecause burglary of a "dwelling" . . . was not included within the statutory elements

9

making up the defendant's burglary adjudication . . . [it] should have been classified as a nonperson felony for criminal history purposes.'" *Dickey II*, 305 Kan. at 221.

Having clarified that the proper classification of a prior crime for criminal history purposes is a matter of statutory law, the court concluded that despite the procedural posture of the case, the claim in *Dickey II* was identical to, and controlled by, the court's determination in *Dickey I* that Dickey's 1992 Kansas burglary adjudication was misclassified as a person felony resulting in an illegal sentence. 305 Kan. at 222. Specifically, the court stated: "The State's remaining efforts to impose a procedural bar to the relief Dickey seeks—*arguments concerning retroactivity and res judicata*—are all unavailing in the context of a motion to correct an illegal sentence which can be made at any time." (Emphasis added.) 305 Kan. at 222.

Our Supreme Court in *Dickey II* makes clear that a sentence based on an incorrect criminal history score is an illegal sentence that can be corrected at any time regardless of the procedural posture of the case. Thus, the holding in *Dickey I*—that a prior burglary adjudication based on a statute that does not include an element that the burglarized structure be a dwelling must be scored as a nonperson felony—applies whether the issue is raised on direct appeal or on collateral review of a sentence that is already final. Likewise, our Supreme Court has explained that the proper classification of a prior crime for criminal history purposes is a question of state statutory law, not constitutional law.

In *Dickey II*, our Supreme Court expressly reaffirmed the "*Moncla* rule" that the definition of an illegal sentence does not include a claim that the sentence violates a constitutional provision and a defendant may not file a motion to correct an illegal sentence based on a constitutional challenge to his or her sentence. 305 Kan. at 221. The Supreme Court means what it says in reaffirming this longstanding rule. For example, in *State v. Warrior*, 303 Kan. 1008, 368 P.3d 1111 (2016), the defendant filed a motion to correct illegal sentence claiming her hard 50 life sentence was unconstitutional in light of

10

the United States Supreme Court's decision in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151, 2163, 186 L. Ed. 2d 314 (2013), which held that "'a person's right to a jury trial under the Sixth Amendment to the United States Constitution requires that any fact increasing a mandatory minimum sentence for a crime must be proved to a jury beyond a reasonable doubt.'" *Warrior*, 303 Kan. at 1008-09. The defendant asserted that based on the holding in *Alleyne*, her hard 50 sentence was illegal because the aggravating factors used to impose the sentence had been found by a judge, not a jury, and K.S.A. 22-3501(1) empowered the court to correct an illegal sentence "at any time." *Warrior*, 303 Kan. at 1009. The district court summarily denied the defendant's motion and our Supreme Court affirmed, noting that K.S.A. 22-3504(1) has very limited applicability and it does not cover a claim that a sentence violates a constitutional provision. 303 Kan. at 1010.

However, the outcome is different when a sentencing challenge results in a determination that the defendant's criminal history score is incorrect. For instance, in *State v. Neal*, 292 Kan. 625, 627, 258 P.3d 365 (2011), Neal filed a motion to correct illegal sentence under K.S.A. 22-3504(1) and raised a constitutional challenge to his sentence, arguing that prior uncounseled misdemeanor convictions could not be aggregated and included in calculating his criminal history score. Our Supreme Court led off the opinion by discussing whether Neal's motion was procedurally barred, *i.e.*, whether K.S.A. 22-3504(1) was a proper vehicle for his claim. The court noted that it has defined an illegal sentence as one imposed by a court without jurisdiction; a sentence which does not conform to the statutory provision, either in character or in the term of the punishment authorized; or a sentence which is ambiguous with regard to the time and manner in which it is to be served. 292 Kan. at 630. The court determined that if either the crime severity level or the criminal history score is in error, a party can challenge the resulting sentence as being illegal. 292 Kan. at 631. Specifically, the court concluded:

"Here, Neal's challenge to his criminal history score is necessarily a challenge to his sentence that the history score helped produce. If the history score is incorrect, it follows that his resulting sentence cannot conform with the statutory provision in the term of the punishment authorized [citation omitted], and, consequently, is an illegal sentence. Accordingly, K.S.A. 22-3504 is the proper vehicle for his claim. [Citation omitted.]" 292 Kan. at 631.

Interestingly, Neal initially was convicted and sentenced for his crimes in 2000. His motion to correct illegal sentence, filed 7 years later, contended that the district court had erred in aggregating his municipal misdemeanor convictions into a person felony because two of the convictions—which had resulted in suspended jail sentences—were uncounseled and therefore should not have been included in his criminal history. The district court summarily denied Neal's motion and on appeal, a panel of this court rejected Neal's claim, relying on *State v. Delacruz*, 25 Kan. 129, 899 P.2d 1042 (1995), which held that uncounseled convictions could be included in a defendant's criminal history provided the convictions did not result in incarceration even if the inclusion of these convictions resulted in the enhancement of the defendant's sentence. *State v. Neal*, No. 100,366, 2009 WL 1140329, at *3 (Kan. App. 2009) (unpublished opinion).

However, our Supreme Court reversed, explaining that while our court had correctly articulated the holding from *Delacruz* concerning the use of uncounseled misdemeanors, the Supreme Court had "recently refined" some aspects of *Delecruz'* holding in *State v. Youngblood*, 288 Kan. 659, 206 P.3d 518 (2009). *Neal*, 292 Kan. at 633. The *Neal* court noted that after considering the United States Supreme Court's decision in *Alabama v. Shelton*, 535 U.S. 654, 122 S. Ct. 1764, 152 L. Ed. 2d 888 (2002), the *Youngblood* court had eliminated the *Delecruz* bright-line "actual imprisonment" rule and found that a person accused of a misdemeanor has a Sixth Amendment right to counsel if the sentence to be imposed upon conviction includes a term of imprisonment, even if the jail time is suspended or conditioned upon a term of probation. *Neal*, 292 Kan. at 633. As result, our Supreme Court held that because Neal's misdemeanor convictions

12

had prison sentences imposed but were conditioned upon a term of probation, he had a constitutional right to counsel in both cases. 292 Kan. at 635. Accordingly, our Supreme Court remanded for an evidentiary hearing to determine whether Neal had counsel in the misdemeanor cases or whether he properly waived his right to counsel. 292 Kan. at 640.

The point of this discussion is that Neal's criminal history was correctly calculated and his sentence was legal at the time it was imposed in 2000, based upon caselaw at the time addressing uncounseled misdemeanor convictions. But based on appellate decisions that were handed down after Neal's sentence was imposed and became final, our Supreme Court allowed Neal to proceed with his motion to correct illegal sentence because the decisions possibly affected his criminal history score. The court's decision in *Neal* does not directly address the retroactivity argument raised by the State in this appeal. But the analysis in *Neal* supports our Supreme Court's conclusion in *Dickey II* that retroactivity analysis is not applicable when it is determined by a court that a constitutional error affects the defendant's criminal history score resulting in an illegal sentence.

*Does the holding in Dickey I apply to sentences that became final prior to Apprendi?*

Returning to our facts, McAlister argues that his criminal history score was incorrectly calculated in each of his three cases because the PSI report showed prior Kansas convictions in 1992 of two counts of burglary and one count of conspiracy to commit burglary, and each of these convictions was scored as a person felony in violation of the holding in *Dickey I*. The district court ruled that McAlister's motions were procedurally barred by res judicata because he had challenged his sentences in his direct appeal and also because the holding in *Dickey I* did not apply retroactively to McAlister's sentences, which were final prior to the ruling in *Dickey I*.

The State's brief, which was filed after the Kansas Supreme Court issued its decision in *Dickey II*, makes no attempt to argue that McAlister's motions are

13

procedurally barred by the doctrine of res judicata. Also, the State does not argue that the holding in *Dickey I* only applies to cases that were pending or became final after our Supreme Court's decision in that case, although this was the ruling made by the district court. However, the State notes that in *Dickey I* and *Dickey II*, the cases reviewed on appeal occurred after *Apprendi* was decided whereas McAlister's sentences were final prior to *Apprendi*. Based on this distinction, the State argues that McAlister is not entitled to retroactive relief on his motions to correct his illegal sentences based on the holding in *Dickey I* because his sentences became final prior to the decision in *Apprendi*.

The State's argument has support in prior decisions from Kansas appellate courts. As previously stated, our Supreme Court's holding in *Dickey I*, based on the rationale expressed by the court in its decision, appears to have been an application of the constitutional rule announced in *Apprendi* and clarified in *Descamps*. The Kansas Supreme Court previously has ruled that constitutional claims based on *Apprendi* do not apply to sentences that became final prior to the decision in *Apprendi*. In *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001), a case addressing the constitutionality of upward departure sentences, our Supreme Court stated:

> "Our holding on the constitutionality of upward departures under the [Kansas Sentencing Guidelines Act] has no retroactive application to cases final as of June 26, 2000, the date *Apprendi* was decided. However, the new constitutional sentencing rule established by *Apprendi* must be applied here and in all cases pending on direct appeal or which are not yet final or which arose after June 26, 2000."

Also, as the State points out, opinions from our court have stated, at least in dicta, that the holding in *Dickey I* does not apply retroactively to sentences that became final prior to the decision in *Apprendi*. For instance, in *State v. Thomas*, 53 Kan. App. 2d 15, 24, 383 P.3d 152 (2016), *rev. denied* April 19, 2017, this court stated that "the court's holding in *Dickey* [*I*] is not a 'change in the law' under that analysis, but rather an application of the constitutional rule announced in *Apprendi* and clarified by *Descamps*.

14

[Citations omitted.] Accordingly, the date *Apprendi* was decided is the relevant date for purposes of the retroactivity analysis." See also *State v. Sartin*, No. 115,172, 2017 WL 462696, at *2 (Kan. App. 2017) (unpublished opinion) (defendant's arguments based on *Apprendi*/*Descamps* failed because direct appeal was final in 1997), *petition for rev. filed* February 27, 2017; *State v. Tauer*, No. 114,432, 2016 WL 7032167, at *2 (Kan. App. 2016) (unpublished opinion) (defendant whose sentence became final before *Apprendi* not entitled to relief under *Dickey*), *petition for rev. filed* January 2, 2017; *State v. Nelson*, No. 113,895, 2016 WL 6821852, at *2 (Kan. App. 2016) (unpublished opinion) (defendant not entitled to relief under *Dickey* if sentence was final prior to *Apprendi*).

The prior decisions from this court that have stated that the holding in *Dickey I* does not apply retroactively to sentences that became final prior to the decision in *Apprendi* were either decided before our Supreme Court's decision in *Dickey II*, or the decisions failed to consider the court's analysis in *Dickey II*. Our Supreme Court's holding in *Dickey I* appears to have been an application of the constitutional rule announced in *Apprendi*. Based on this analysis, it would make sense that the holding in *Dickey I* does not apply retroactively to sentences that became final prior to the decision in *Apprendi*. However, in *Dickey II* our Supreme Court explained that the proper classification of a prior crime as a person or nonperson felony for criminal history purposes is based on statutory law, not constitutional law. This distinction is significant in deciding whether the holding in *Dickey I* applies to sentences that became final before *Apprendi*.

Here, McAlister's 1992 convictions of burglary and conspiracy to commit burglary were committed at a time when the Kansas burglary statute did not include an element that the burglarized structure be a dwelling. The classification of a prior burglary conviction or adjudication for criminal history purposes is controlled by K.S.A. 2016 Supp. 21-6811(d). Pursuant to that statute, McAlister's 1992 convictions of burglary and conspiracy to commit burglary should have been scored as nonperson felonies. Because McAlister's criminal history score was incorrect, the resulting sentence in each of his

15

cases does not conform to the statutory provision in the term of the punishment authorized and, consequently, is an illegal sentence. K.S.A. 22-3504(1) provides that an illegal sentence can be corrected *at any time*. Under this analysis, it does not matter that McAlister's sentences became final prior to the decision in *Apprendi*.

More fundamentally, it appears that our Supreme Court has adopted a position that the legislative directive in K.S.A. 22-3504(1) that an illegal sentence can be corrected at any time supersedes all procedural bars that, in the past, might normally have prevented a defendant from seeking relief through a motion to correct an illegal sentence. As the court explicitly stated in *Dickey II*: "The State's remaining efforts to impose a procedural bar to the relief Dickey seeks—arguments concerning retroactivity and res judicata—are all unavailing in the context of a motion to correct an illegal sentence which can be made at any time." 305 Kan. at 222. The concurring opinion correctly illustrates that our Supreme Court's treatment of this subject has not been consistent over the years. But based on the court's most recent analysis in *Dickey II* including the explicit statement that retroactivity analysis is not applicable in the context of a motion to correct an illegal sentence, we must reject the State's argument that the holding in *Dickey I* does not apply to sentences that were final prior to the decision in *Apprendi*.

To sum up, we conclude that the district court erred when it found that McAlister's motions to correct his illegal sentences were procedurally barred. We remand with directions for the district court to reclassify McAlister's 1992 burglary-related convictions as nonperson felonies for criminal history purposes. As the State correctly points out in its brief, even if the burglary-related convictions are reclassified as nonperson felonies, McAlister remains in criminal history category A in 96CR40, and his current sentence in that case is legal. However, the reclassification will affect McAlister's criminal history score in 96CR41 and 96CR49. The sentences in those cases are vacated and we remand for resentencing based on the correct criminal history score.

Sentences vacated and case is remanded with directions.

* * *

GARDNER, J., concurring:  I concur in the result, but write separately because I do not read *Dickey II* as broadly as does the majority.

The Kansas Supreme Court did not hold in *Dickey II* that its *Dickey I Apprendi/Descamps* analysis should no longer be applied. Instead, under *Dickey II*, *Apprendi* remains a necessary foundational step in the classification of the prior burglary convictions in this case.

The language in *Dickey II* is qualified. It does not dismiss *Dickey I*'s *Apprendi* analysis as irrelevant to the proper classification of the prior crime, but considers the constitutional analysis a necessary precursor to the state statutory analysis.

> "[T]he methodology utilized by the State and the district court to find the additional fact that Dickey's prior burglary conviction issue involved a dwelling turned out to be constitutionally infirm pursuant to *Apprendi* and its progeny. The bulk of our opinion in *Dickey I* was spent resolving this question. However, once that question was resolved, we returned to consider the question of the proper classification of the prior crime *purely as a matter of statutory law*." *State v. Dickey*, 305 Kan. 217, 221, 380 P.3d 230 (2016)

The *Apprendi* analysis in *Dickey I* was the only reason the State was constitutionally prohibited from classifying the defendant's prior burglary adjudication as a person felony under K.S.A. 2014 Supp. 21-6811(d). Nothing in our state statutory law independently compelled that result. *Dickey II*'s explanation of *Dickey I*, and *Dickey I* itself, incorporate an "elements test," which is not part of our state statutory law regarding the classification of prior burglaries.

17

"Our holding in *Dickey I* demonstrates that the proper classification of a prior crime is exclusively a matter of state statutory law. Which is simply to reiterate that '[b]ecause burglary of a "dwelling" . . . was not included within the *statutory elements* making up the defendant's burglary adjudication . . . [it] should have been classified as a nonperson felony for criminal history purposes.'" (Emphasis added.) *Dickey II*, 305 Kan. at 221.

But nothing in our state statutory law regarding the classification of prior burglaries requires a court to consider only "the statutory elements making up the defendant's prior burglary adjudication," as do *Dickey I* and *Dickey II*. See K.S.A. 2014 Supp. 21-6811(d). Instead, our state statutory law provides that prior burglary convictions will be scored as a prior person felony if the prior conviction was classified as a burglary as defined in K.S.A. 21-3715(a), prior to its repeal, or K.S.A. 2014 Supp. 21-5807(a)(1), and amendments thereto, and that "[t]he facts required to classify prior burglary adult convictions and juvenile adjudications shall be established by the state by a preponderance of the evidence." K.S.A. 2014 Supp. 21-6811(d). It was *Dickey I*, not our state statutory law, which found "the methods *Descamps* outlined for making this determination in a constitutionally valid manner necessarily apply to determining whether a prior burglary conviction should be classified as a person or nonperson felony under the KSGA." *State v. Dickey*, 301 Kan. 1018, 1038-39, 350 P.3d 1054 (2015).

Our pre-*Descamps* cases demonstrate that this elements test, adopted in *Dickey I* and relied on in *Dickey II,* is based on *Descamps* and not on our state statutory law. "Prior to *Descamps*, our court rejected the applicability of the *Apprendi* rule to the classification of prior convictions and adjudications for purposes of determining a defendant's criminal history score even when it was necessary for the sentencing judge to engage in additional factfinding." *State v. Goodman*, No. 111,431, 2015 WL 1882149, at *5 (Kan. App.) (unpublished opinion) *rev. denied* 303 Kan. 1080 (2015); see, *e.g.*, *State v. May*, 39 Kan. App. 2d 990, 997, 186 P.3d 847 ("whether [the defendant's] prior burglaries were of a dwelling is a sentencing factor and not an element of the present crime so as to invoke the

18

provisions of *Apprendi*"), *overruled on other grounds by State v. Daws*, 303 Kan. 785, 786, 368 P.3d 1074 (2016); *State v. Sloan*, No. 105,145, 2012 WL 308537, at *3-4 (Kan. App. 2012) (unpublished opinion) (defendant's criminal history does not implicate *Apprendi* but is mere sentencing factor), *rev. denied* 296 Kan. 1135 (2013); *State v. Berwert*, No. 100,226, 2009 WL 2436681, at *6 (Kan. App. 2009) (unpublished opinion) (facts necessary to classify defendant's 1964 prior burglary need not be proven to jury beyond reasonable doubt), *rev. denied* 290 Kan. 1096 (2010).

*Dickey I* and *Dickey II* demonstrate that although the ultimate decision regarding the proper classification of a prior crime is exclusively a matter of state statutory law, that conclusion cannot be reached, according to Kansas precedent, without first applying *Apprendi* and its progeny. McAlister's motion is thus based on *Apprendi*. As the majority acknowledges, slip op. at 14, the Kansas Supreme Court has previously ruled that claims based on *Apprendi* do not apply to sentences that became final prior to the decision in *Apprendi*.

> "Our holding on the constitutionality of upward departures under the [Kansas Sentencing Guidelines Act] has no retroactive application to cases final as of June 26, 2000, the date *Apprendi* was decided. However, the new constitutional sentencing rule established by *Apprendi* must be applied here and in all cases pending on direct appeal or which are not yet final or which arose after June 26, 2000." *State v. Gould*, 271 Kan. 394, 414, 23 P.3d 801 (2001).

As the State contends, this rule, if applied here, would bar McAlister's claim because his cases were final before June 26, 2000. I would therefore agree with the prior decisions from this court noted in the majority opinion that have found *Dickey I* does not apply retroactively to sentences that became final prior to the decision in *Apprendi.*

19

But our court is duty bound to follow Kansas Supreme Court precedent, *State v. Ottinger*, 46 Kan. App. 2d 647, 655, 264 P.3d 1027 (2011) *rev. denied* 294 Kan. 946 (2012), and *Dickey II* holds:

> "The State's remaining efforts to impose a procedural bar to the relief Dickey seeks—arguments concerning retroactivity and res judicata—are all unavailing in the context of a motion to correct an illegal sentence which can be made at any time." *Dickey II*, 305 Kan. at 222.

*Dickey II* makes no analysis of these procedural bars and ignores *Gould.*

This dismissive treatment of the State's procedural arguments flies in the face of our Supreme Court's analysis in *State v. Conley*, 287 Kan. 696, 698, 197 P.3d 837 (2008), which reached the opposite conclusion:

> "Res judicata applies to motions to correct illegal sentence filed pursuant to K.S.A. 22-3504. Such a motion may not be used to breathe new life into an appellate issue previously adversely determined."

Otherwise, "the same issue could be endlessly raised despite adverse appellate determinations." 287 Kan. at 698. This appears to be what has happened here. On direct appeal, McAlister challenged the calculation of his sentences in all three cases, and we held against him, affirming both his convictions and his sentences. McAlister's current motion merely argues a different theory for the same sentencing issue that he previously raised and we decided against him in his direct appeal. But the State has not preserved its res judicata argument.

Nonetheless, *Conley*'s analysis is relevant to the retroactivity argument the State has preserved and to *Dickey II*'s finding that retroactivity is unavailing because a motion to correct an illegal sentence can be made at any time. As *Conley* recognizes, K.S.A. 22-

20

3504's provision that an illegal sentence can be corrected "at any time" merely means that, unlike our other statutes providing post-conviction remedies, the legislature has imposed no time limit in which to bring these motions. 287 Kan. at 698. See K.S.A. 60-1507(f)(1) (providing a defendant has 1 year from when a conviction becomes final to file a motion under K.S.A. 60-1507[a]); K.S.A. 60-1501(b) (stating a writ of habeas corpus must be filed within 30 days from the date the action was final); K.S.A. 22-3608(c) (providing a defendant has 14 days from the date the conviction becomes final to file a notice of appeal). But as *Conley* finds, the fact that K.S.A. 22-3504 provides that such a motion may be brought "at any time" is "not authorization for 'do-overs.'" 287 Kan. at 698, citing *State v. Johnson*, 269 Kan. 594, 602, 7 P.3d 294 (2000) (holding that K.S.A. 22-3504 "may not be used as a vehicle to breathe new life into appellate issues previously abandoned or adversely determined"); and *State v. Neer*, 247 Kan. 137, Syl. ¶ 2, 795 P.2d 362 (1990) (holding "where an appeal is taken from the sentence imposed and/or a conviction, the judgment of the reviewing court is res judicata as to all issues actually raised, and those issues that could have been presented, but were not presented, are deemed waived").

I do not believe that K.S.A. 22-3504's "at any time" language means that an illegal sentence can be corrected in any manner, under any circumstances, or that the issue can be relitigated time and time again. But *Dickey II* says that it does and we are bound by that holding. Accordingly, for that reason, I concur in the result.

21